## WILLARD vs. GILES.

PLEADING AND EVIDENCE: *Certain defenses held to be consistent — What evidence admissible to disprove a conversion.*

1. A denial that defendant ever received any *choses in action* (as collateral securities) is not inconsistent with the defense that, if received by him, they were lost without his fault.
2. Evidence may be received to sustain both of said defenses under an answer which denies the conversion, although such answer shows that defendant's refusal to deliver the property to plaintiff on demand was put on the ground that he never had it.

APPEAL from the Circuit Court for *Dane* County.

The complaint alleges that, on, etc., plaintiff borrowed of defendant $200, and deposited with him, as collateral security for its repayment, three notes, for $317, $275 and $400 respectively, with a mortgage securing the note last mentioned; and also a United States bond for $500; that plaintiff has since paid said $200, and has demanded said securities, which defendant has failed to deliver, but has converted to his own use. Judgment is demanded "for the wrongful conversion of said notes, mortgage and bond." The answer admits the loan and payment of said $200, and that since said payment "plaintiff requested defendant to deliver

to him certain securities, which he, plaintiff, claimed
that he had left with defendant as collateral security for
said money loaned ; and which defendant then denied,
and still does deny, to have been the fact.   And defend-
ant denies that he had any such securities in his hands ;
and admits that he did not deliver any to plaintiff when
so requested.   And he denies each and every allegation
of the complaint not otherwise herein answered.''

On the trial, the evidence for the plaintiff tended to
show that he left a package containing the notes, mort-
gage and bond described in the complaint, with the
defendant, at his house in Stoughton, as collateral secur-
ity for a loan of $200.   The defendant's evidence tended to
show, that plaintiff, after receiving a check on Flint &
Turner of Stoughton, for the $200, proposed to leave with
him a package of choses in action ; that defendant did
not know what they were, and did not understand that
he was to receive them as collateral security ; that he
advised plaintiff to take the package to Flint & Tur-
ner's, as they had the best safe in said village of Stough-
ton, and he (defendant) was going east in a few days ;
that he afterward, before going east, left with Flint &
Turner another package, which plaintiff had deposited
with him for safe keeping, containing United States
bonds, and made an indorsement upon the package that
plaintiff owed him $200 ; that the $200 were repaid in
June following ; and that it was not until sometime
in the following fall that plaintiff claimed to have left
with him said notes and $500 bond, and that they were
not to be found at Flint & Turner's.   One Hough, the
maker of two of the notes in question, testified that two
or three weeks before they became due, plaintiff came
to him to see if he would pay, and said he had lost the
notes ; that he had hunted his house over and could not
find them, and thought he had left them with *Giles* at
Stoughton.   One Newman, joint maker with Hough of
one of the notes, testified that he met plaintiff at Hough's

house at the time spoken of by the latter, and plaintiff said the notes were lost; that he had looked over his house and premises, and at Stoughton, where he supposed he might have left them, but could not find them.

The court, at the plaintiff's request, instructed the jury, (2) that if the notes and bond were deposited as security for the repayment of the $200, and if, after the payment thereof, defendant denied that he had received the property, or ever had it, under the issue joined in this case it was not necessary for the plaintiff to show any want of care on the part of defendant, or that the property was lost through his negligence. It further instructed them that defendant was estopped from setting up that he received the property, and that it was lost without his fault. At defendant's request, the jury were further instructed, that if the notes and bond in question were not delivered to defendant, they must find for him; that if they were delivered to him as security for a loan of money, and were not converted by him to his own use, but were lost, and if he exercised ordinary care and diligence in their custody, then plaintiff could not recover; that if they were not received as security for a loan of money, and were lost, plaintiff could not recover unless they were lost through the gross negligence of defendant; that "gross negligence is such negligence as amounts to a want of good faith, and is equal to fraud;" that it is the omission of that care which even the most inattentive and thoughtless never fail to take of their own concerns. Plaintiff excepted to these instructions, "for the reason that they were contradictory, and tended to mislead the jury."

Verdict and judgment for defendant; and plaintiff appealed.

*Hopkins & Foote*, for appellant, contended that the answer amounted to a simple denial of the bailment, and all plaintiff had to show on that issue was the delivery of the bond and notes to defendant as alleged,

payment of the loan and demand for the securities, and defendant's denial of ever having received them. *Bush v. Miller*, 13 Barb. 481; *Dunlap v. Hunting*, 2 Denio, 643. The charge to the jury suggested a new defense, as in the case of *Plant's Man. Co. v. Falvey*, 20 Wis. 200. To entitle the defendant to such a defense, he should have set it up in his answer. 1 Ld. Raym. 87; 12 Barb. 573; *Hartwell v. Page*, 14 Wis. 49. The two defenses, that he had not received the bonds, and that he had lost them without his fault, would have been inconsistent if pleaded, and the latter should not have been allowed at the trial. *Arnold v. Dimon*, 4 Sandf. 680; 9 How. Pr. 57; 11 id. 163. 2. The charge is contradictory, and must have confused the jury. *Imhoff v. Ch. & Mil. R. R. Co.*, 20 Wis. 344.

*Gregory & Pinney*, for respondent, contended, from the allegations of the complaint and the demand for judgment, that this was an action founded in *tort* for the conversion of the property (*Rider v. Whitlock*, 12 How. Pr. 208; *Mowry's Case*, 12 Wis. 57, 58; *Chambers v. Lewis*, 11 Abb. 210; 10 id. 206; *Gillett v. Treganza*, 13 Wis. 472); that to make a demand and refusal sufficient evidence of a conversion, the party, when he refuses, must have it in his power to deliver up or detain the article demanded (*Smith v. Young*, 1 Campb. 439; *Hill v. Covell*, 1 Comst. 522; *Andrews v. Shattuck*, 32 Barb. 396; *Whitney v. Slauson*, 30 id. 276, 485; *Knapp v. Winchester*, 11 Vt. 351); that defendant's inability in this case having been proven, plaintiff could not recover without showing an *actual* conversion, which he did not attempt to do; and that defendant was entitled, under his general denial, to the benefit of any facts established at the trial, showing that he was not liable as charged in the complaint.

PAINE, J. The claim of the appellant, that the instructions given to the jury were erroneous, is based

upon the position that, under the pleadings, the only issue was whether the defendant ever received the securities. And he contended that it was incompetent for the defendant to deny ever having received them, and at the same time to say that, if he did receive them, they were lost without his fault.

I can see no good reason why the defendant may not deny both of the allegations of the complaint. It is true, that if he succeeds on the first denial, and shows that he never did receive the property, the other question does not arise. But he might possibly be mistaken as to whether he had received them. And, if he was, the fact of his being driven from that line of defense is no reason why he should be deprived of all right to make any further defense at all.

The evidence in this case very clearly illustrates the necessity of this rule. There can be no doubt that the defendant denied the reception of the property in the utmost good faith. The proof certainly tends very strongly to confirm his statements in that respect. The improbability of depositing so large an amount of securities as collateral to so small a loan ; the entire uncertainty of the plaintiff as to where the notes were, as revealed by his statements to Hough and Newman, that he had lost them, that he had hunted all over his house for them and could not find them, and that he had looked at Stoughton, where he "supposed he *might* have left them :" all this tends to show that the defendant did not deny having received this property without very strong reasons for denying it.

But if, contrary to the obvious force of the evidence, he was mistaken after all — if he, too, as well as the plaintiff, forgot about it — still, if the subsequent facts were such as to relieve him from liability, why should he not be permitted to claim the exemption ? It would certainly be visiting a severe punishment upon a defendant to say, that because he had unsuccessfully contested

one of the material allegations of the complaint, therefore he should be estopped from contesting any of the others.

Were the pleadings such as to put in issue any thing except the question whether the securities were ever received? I think they were. It is true, the answer admits the demand, and that the defendant did not deliver — showing at the same time that the refusal was put upon the ground that he did not then have, and never had, the property. But the allegation in the complaint of a conversion of the property by the defendant is denied. That is the material allegation. A demand and refusal to deliver are not a conversion. They are only evidence of it. If, at the time of such demand and refusal, the property was not in the defendant's possession, but had been lost, notwithstanding he had bestowed upon it all the care which the law required of him under the circumstances, then there was no conversion, and he was not liable.

Now, upon the assumption that he had once received the property, the questions, whether it still remained in his possession at the time of the demand, and whether, if not, it had been lost without fault on his part, were both questions which would necessarily arise in determining whether there was any conversion. And the allegation of a conversion on the one part, with the denial of it on the other, is sufficient to admit the proof upon these points.

It is true, the plaintiff might establish a *prima facie* case, by showing the property to have been received by the defendant, and a demand and refusal to deliver. And this was doubtless all that the court below meant in giving the jury the second instruction asked by the plaintiff, which the plaintiff's counsel now claims to have been in conflict with those subsequently given at the request of the defendant. But when, in this instruction, the court told the jury that it was "not neces-

sary for the plaintiff to show any want of care on the part of the defendant, or to show that the property was lost through the negligence of the defendant — that the demand and refusal was enough''—it had reference to what was necessary for the plaintiff in the first instance, to establish a *prima facie* case. With that interpretation, there is no repugnance between this and the instructions subsequently given for the defendant. Otherwise, there would be.

For the court proceeded to tell the jury that, if the property was received by the defendant as collateral to a loan, and was not converted by him, but was lost notwithstanding the exercise of ordinary care on his part, he would not be liable ; and that, if it was a gratuitous deposit for safe-keeping merely, and was lost, the defendant would not be liable, unless guilty· of gross negligence. Both of these propositions were correct; and, if the third instruction asked by the plaintiff, and given, was in any degree in conflict with the right of the defendant to have these questions submitted to the jury, it was an error against the defendant, of which the plaintiff cannot complain. Upon the whole evidence, he had the right to have it submitted to the jury, whether, even if he had received these securities, he had not deposited them with Flint & Turner, whose safe was the most secure place to which he had access, and thus exercised all the care and prudence that the law required.

There is little doubt, upon the evidence, that the jury found for the defendant upon the ground that he never received the securities at all. But, as there was no special verdict showing that fact, it became necessary to examine the questions already discussed. I think there was no error of which the plaintiff can complain, and that the judgment should be affirmed.

*By the Court.* — Judgment affirmed.