SMITH, Respondent, vs. POOR HAND MAIDS OF JESUS CHRIST, Appellant.

*April 7—May 3, 1927.*

*Bailment: Money left for safe-keeping with gratuitous bailee: Degree of care required: Limitation of actions: When cause of action accrues: Appeal: Case tried on wrong theory: New trial.*

1. Where an action by an employee for money left with his employer for safe-keeping was tried and determined on the theory that the statute of limitations was involved, and with no determination of the liability under the theory that the relationship of bailor and bailee existed between the parties, a new trial is granted. pp. 66, 68.

2. The statute of limitations did not begin to run against plaintiff's cause of action until after a demand for the return of the money was made. p. 66.

3. Where a bailment is solely for the benefit of the bailor, the bailee is required to exercise only a slight degree of care, and in order to hold him liable for loss he must be guilty of gross negligence. p. 67.

4. The evidence in this case (reviewed in the opinion) is *held* to show that the defendant exercised the degree of care required of a gratuitous bailee under the facts and circumstances, but a new trial is directed, where the issue as to whether or not the defendant was guilty of gross negligence in the safe-keeping of the money may be litigated.  p. 68.

.. APPEAL from a judgment of the superior court of Douglas county: ARCHIBALD McKAY, Judge.  *Reversed.*

The defendant is a corporation engaged in conducting a hospital in the city of Superior.  For upwards of twenty-five years prior to 1923 the plaintiff was engaged in soliciting patients for the defendant on a commission basis.  On a number of occasions during such employment the plaintiff left various sums of money with the defendant for safe-keeping.  Such sums of money were inclosed in an envelope, upon which was indorsed the name of the depositor and the date of the deposit, and the envelope was then stored away in the safe.  No further record was kept of these transactions by the hospital, and the method of safe-keeping resorted to with respect to plaintiff's deposits was similar to that employed in regard to deposits of patients who entered the hospital.

In 1905 the plaintiff deposited with the hospital the sum of $500, which sum was received by a duly authorized representative of the hospital, was inclosed in an envelope, properly indorsed, and then placed in the hospital safe used in connection with deposits of patients, and upon the deposit of the money the hospital issued the following receipt:

"No. ——                              June 30, 1905.

"Received of *Mr. Jas. C. Smith* five hundred and no-100 dollars, for safe-keeping.

"$500.                        Sr. M. AGNES, Supt."

In 1923, at or about the time when plaintiff left the employ of the defendant, he exhibited the above receipt to a sister in charge of the hospital, with the request that this

money be returned to him. Since 1905 changes have occurred in the personnel of the hospital officials, and an examination of the safe revealed that the money was not there on deposit and no trace thereof could be found. The plaintiff at no time between the period of the deposit and the time of the demand for a return had made inquiries with respect to his money nor had he demanded a return thereof, notwithstanding the fact that numerous other deposits had been made in the interim which had been duly returned upon request. When the final settlement for commissions was made between the parties, which occurred at or about the time of the plaintiff's severing his relations with the defendant, no mention was made of this sum. The plaintiff, however, testified that he found the receipt in question among his papers in his safety-deposit box in a bank in Superior.

The case was submitted to the jury on a special verdict consisting of three questions. The jury found, first, that the plaintiff on the 30th day of June, 1905, delivered to the defendant for safe-keeping the sum of $500; second, that the defendant did not repay said amount to the plaintiff; and third, that the plaintiff on or about the 15th day of August, 1923, demanded from the defendant repayment of said amount. No other issues were submitted by the court or requested by either counsel, and the instructions of the court to the jury were strictly confined to the issues involved in these three questions.

Upon the conclusion of the evidence defendant's counsel moved for a directed verdict upon the ground that plaintiff's claim was barred by the statute of limitations. This motion was denied by the court. After verdict defendant's counsel moved for a new trial, based principally upon the ground that the relationship of bailor and bailee existed between the parties and that the court misconceived the real issue in the case, which consisted of whether or not the defendant was guilty of gross negligence.

For the appellant there was a brief signed by *Cadigan & Cadigan* of Superior, and oral argument by *John A. Cadigan.*

For the respondent the cause was submitted on the brief of *Ernest Suave* of Iron River.

DOERFLER, J.    Under the provisions of sec. 270.28 of the Statutes, which provides: "Whenever any special verdict shall be submitted to a jury and there is omitted therefrom some controverted matter of fact not brought to the attention of the trial court by request but essential to sustain the judgment, such matter of fact shall be deemed determined by the court in conformity with its judgment, . . ." a new trial should be denied unless it clearly appears from the record that justice has not been done.    Both counsel, as it appears from the record, labored under the impression that the vital issue involved the statute of limitations.    That the relationship of gratuitous bailor and bailee existed between the defendant and the plaintiff can hardly be disputed, and yet no trace of such a contention appears anywhere in the record.    In 37 Corp. Jur. p. 840, § 193, it is said:

"A bailor's right of action against his bailee accrues at the time of the latter's breach of duty under the contract of bailment, and the statute of limitations then begins to run. Unless the term of the bailment is limited, no lapse of time bars the bailor's right to the property, and his right of action does not accrue and the statute does not begin to run until denial of the bailment and conversion of the property by the bailee or some one claiming under him.    To set the statute in motion there must be some act of the bailee inconsistent with the bailment and changing the nature of his holding, such as a refusal to deliver on demand."

No demand having been made by the plaintiff for the return of his money until 1923, the statute of limitations did not begin to run until that time, and no issue on the statute was therefore involved.

Smith v. Poor Hand Maids of Jesus Christ, 193 Wis. 63.

In 3 Ruling Case Law, 93, it is said:

"The quantum of diligence required to be exerted by a bailee in the care of an article bailed hinges on the question of recompense or no recompense. In accordance with this cardinal principle, there are, corresponding with the modern threefold division of bailments into bailments for the sole benefit of the bailor, bailments for the mutual benefit of both parties, and bailments for the benefit of the bailee, three different standards of diligence or care to be observed by the various kinds of bailees: slight, ordinary, and great or more than ordinary."

Under the rule applicable to gratuitous bailments, where the bailment is solely for the benefit of the bailor, the bailee is required to exercise only a slight degree of care. In other words, in order to hold him liable he must be guilty of gross negligence. See, also, *Minor v. C. & N. W. R. Co.* 19 Wis. 40; *Willard v. Giles,* 24 Wis. 319.

A careful review of the evidence satisfies us that the defendant has exercised the degree of care required of it under the facts and circumstances existing in the instant case. It received no compensation for the safe-keeping of the plaintiff's money. It deposited the same in its safe, where it deposited its other valuable articles and where it also kept the moneys of patients in the hospital. The money was inclosed in an envelope, which was properly indorsed for identification purposes. The money was left with the defendant for a period of eighteen years, and during all this time no inquiry as to such deposit was made by the plaintiff and no effort was exerted to determine whether the money was still upon deposit. The long delay, under the circumstances, goes to the question of whether or not the defendant is guilty of gross negligence.

During this period changes occurred in the management of the hospital. The defendant is nowhere charged with fraud or bad faith, and the evidence establishes neither. Other sums of money had been left by the plaintiff for safe-

keeping for shorter intervals, and had been withdrawn by him. Not only was no inquiry made as to this money for a period of eighteen years, but at the time the plaintiff severed his connection with the hospital no mention of the deposit in question was made. No effort was made to trace this money into the funds of the hospital, and no one having the management of the hospital in charge, or any of the employees, was even placed under suspicion with respect to the taking or conversion of this fund.

While the statute of limitations, as above stated, did not begin to run until 1923, the long lapse of time, under all the facts and circumstances in the case, during which period the plaintiff continued as an employee of the hospital and knew its manner of transacting business, constitutes strong probative force upon the question of whether or not the defendant was guilty of gross negligence in the safe-keeping of this money.

It is the object of all litigation to promote substantial justice. Neither counsel nor the court conceived or comprehended, as far as the record discloses, the vital issue in the case, and therefore we have concluded to reverse the judgment, with directions for a new trial.

*By the Court.*—It is so ordered.