**NATIONAL FIRE INSURANCE COMPANY, a Connecticut Corporation, Plaintiff,**

v.

**CITY OF GREEN BAY, Defendant and Third-Party Plaintiff,**

v.

**MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Third-Party Defendant.**

No. 62–C–316.

United States District Court
E. D. Wisconsin.

Nov. 17, 1965.

10. 18¢ and 16¢ net in 1959 to 17¢ and 15¢ net in 1965.

Kenneth Kenney, Milwaukee, Wis., for plaintiff.

Richard G. Greenwood, Green Bay, Wis., for defendant and third-party plaintiff.

Hanlin J. Hayes, Milwaukee, Wis., for third-party defendant.

GRUBB, District Judge.

This is an action by National Fire Insurance Company, a Connecticut corporation, as the subrogated insurer of Aring Equipment Company, a bailor, against the City of Green Bay, a Wisconsin municipal corporation, as bailee, to recover damages arising from a fire loss to a tractor dozer owned by Aring but in the City's possession, which loss was allegedly caused through the negligence of the defendant. The City of Green Bay has proceeded, under Rule 14(a), F.R.Civ.P., against its automobile liability insurer, Mutual Service Casualty Insurance Company, on the theory that if the plaintiff recovers from the defendant, the third-party defendant would be liable to the City of Green Bay under the substitute vehicle or the newly acquired vehicle provisions of Mutual's policy.

The parties have stipulated that the damages in this case are $16,000.

The following facts have been established relating to the creation of the bailment relationship here involved.

In late 1961, the City of Green Bay requested quotations on a rubber tired tractor with bulldozer blade for use in leveling operations at two dump yards maintained by the City. On December 27, 1961, the City placed an order for such a tractor with Aring Equipment Company. It was agreed that the City would trade in, as part of the purchase price, the 1952 Caterpillar D–6 unit it had been using in the dump yards operation. Prior to March 6, 1962, Aring had secured a potential purchaser for the tractor which was to be traded in. An Aring representative requested the City to release the Caterpillar unit so that the sale of the unit could be consummated. Aring offered to loan the City a Michigan loader Model 180 (hereinafter designated "the loaner unit") similar to the one ordered by the City until such time as the unit ordered by the City would be available for delivery. The City agreed to this, and on March 6, 1962, the loaner unit was delivered into the possession of the defendant.

The defendant argues that the bailment thus created at the request of Aring was a bailment for the benefit of the bailor, since Aring was thereby enabled to promptly complete the sale of the trade-in unit.

The facts in this case show that it was also to the advantage of the City to secure the loaner unit. The City was using the trade-in to work on two dump yards located across town from each other, twelve miles apart. In order to get the Caterpillar unit from one dump yard to the other it was necessary to load the unit on a flat bed trailer and haul it across town. The situation was changed when the rubber tired loaner unit went into operation. The loaner unit could

travel between the two dump yards under its own power and this resulted in a saving to the City in terms of manpower, equipment, and time.

■ The Court finds that the bailment involved here, viewed in light of all the evidence in the case, was one for the mutual benefit of the bailor and the bailee.

This finding requires the Court to consider the allegation of negligence on the part of the defendant.

■ The standard of care required of a bailee with respect to bailed property when the bailment is one of mutual benefit is one of ordinary care. Smith v. Poor Hand Maids of Jesus Christ, 193 Wis. 63, 213 N.W. 667 (1927).

■ A presumption of negligence on the part of the bailee arises when the bailor establishes that the bailed property was damaged while in the possession of the bailee. Price & Pierce, Limited v. Jarka Great Lakes Corporation, 37 F.Supp. 939 (W.D.Mich.1941); Afflerbaugh v. Geo. Grede & Bro., 182 Wis. 217, 196 N.W. 224 (1923). These facts have been stipulated. The bailee then has the burden of coming forward with evidence to exonerate himself from any causal negligence.

The evidence adduced at the trial of this case indicates that the loaner unit was delivered to the defendant on March 6, 1962. The fire occurred on the afternoon of March 14, 1962.

During the time that the loaner unit was in the possession of the defendant and before the fire, it was necessary to repair a leak in the fuel pump on three occasions.

On the first occasion, when the operator of the loaner unit became aware of the leak, he called the shop foreman of the City of Green Bay who in turn, called Aring Equipment Company. Aring sent a serviceman to the loaner unit and he made a repair on the fuel pump.

On the second occasion, when a leak was noticed, the same operator again called the shop foreman. The shop foreman attempted to get a serviceman from Aring, but none was available at the time so a city mechanic was sent and he replaced a gasket or an "O" ring on the fuel pump.

The third occasion was on the morning of the day of the fire. The operator of the unit, the same man who was operating the loaner unit on the two previous occasions, was alerted to the fact that belts on the fuel pump were loose and that the pump was leaking fuel oil. The operator undertook the repair himself and secured a "U" wrench and tightened the bolts as tight as he could with that tool. The parts tightened with this wrench were Allen-head screws which are properly tightened with a special tool.

After the operator finished working on the fuel pump, he drove the loaner unit from the dump yard at which the repair was made across town to the other dump yard. The loaner unit was operated at this second yard for about an hour. The operator then heard a "puff" from the engine. He got down from his seat, opened the shield doors on the engine and saw the fuel pump spraying fuel oil and that the engine was on fire. He called to a passerby to notify the fire department, which came and put out the fire.

The loaner unit had diesel engines. A subsequent analysis of the fuel oil indicated that it contained a more volatile fuel, such as gasoline. It is highly dangerous to use fuel oil with more volatile additives in the type of engine that was in the loaner unit.

The evidence in this case compels a finding that the fire in the loaner unit was caused by the ignition of the fuel oil, which contained an additive more volatile than fuel oil, that was spraying and leaking from the fuel pump.

■ The defendant has failed to overcome the presumption of negligence on its part. The evidence in this case shows, and the Court finds, that the defendant was causally negligent in using fuel oil with the volatile additive. The defendant is also found causally negligent in that its

employee undertook, shortly before the fire, to tighten Allen-head screws on the fuel pump with a "U" wrench, an improper tool for the job. Further negligence on the part of the defendant is found in that the defendant operated the loaner unit, in rough dump yard work, after the fuel pump had been found leaking three times within eight days. The defendant should have been alerted to potential danger due to malfunction of the fuel pump.

 The Court also finds causal negligence on the part of Aring Equipment Company, plaintiff's subrogor, in that the Aring serviceman failed to properly repair the fuel pump when the initial leak was found. It also failed to warn defendant of the danger.

The plaintiff and the defendant are agreed that, in the event the Court should find negligence on the part of both Aring Equipment Company and the defendant, the provisions of Section 331.045 of the Wisconsin Statutes are applicable.

The Court finds that 15% of the causal negligence is attributable to Aring Equipment Company and 85% of the causal negligence is attributable to the defendant.

The defendant's claim that the loaner unit was delivered to the City of Green Bay with a defective fuel pump is without support in the evidence presented in this case.

The defendant has conceded that the loaner unit is not covered under any of the provisions of the insurance policy issued to defendant by Mutual Service Casualty Insurance Company, the third-party defendant herein. The third-party complaint should be dismissed.

The foregoing opinion constitutes findings of fact and conclusions of law in accordance with Rule 52(a), Federal Rules of Civil Procedure.

The Clerk is hereby directed to enter judgment in favor of the plaintiff and against the defendant in the amount of $13,600.00 damages, together with its costs and disbursements in this action.

The Clerk is further directed to enter judgment in favor of the third-party defendant and against the third-party plaintiff dismissing the third-party complaint and allowing costs and disbursements to the third-party defendant.