Sandeen and others, Respondents, vs. Willow River Power Company, Appellant.

*January 9—February 6, 1934.*

For the appellant there were briefs by *W. T. Doar,* and oral argument by *Mr. Doar* and *Mr. Warren P. Knowles, III,* both of New Richmond.

For the respondents there was a brief by *Wilcox & Wilcox* of Eau Claire, attorneys, and *K. A. Campbell* of Minneapolis, Minnesota, of counsel, and oral argument by *Francis J. Wilcox* and *Roy P. Wilcox.*

FRITZ, J.  Arthur and Gustaf Sandeen were electrocuted on September 8, 1931, on defendant's premises, while they were shoving a motor truck, on which there was a mounted derrick, belonging to defendant.  Evidence, which in some respects was conflicting, admitted of finding that the truck had been left by defendant south of an oil tank in an open space between defendant's power house and another building used for office and storage purposes, which was about sixty feet to the southwest of the power house.  The oil tank, which occupied about 27 x 11 feet of that space, was parallel and near to the power house.  Across that open space defendant maintained two sets of six parallel, uninsulated wires, which extended from a bracket at the power house, with a span of eighty-eight feet, to a bracket on a pole which was east of the west wall of the office building.  Those wires

were used by defendant for conducting a 2,300 volt current. The lower set of those wires was thirteen and one-half feet above the ground at the power house and eighteen feet above the ground at the pole. Below that lower set of wires there were two insulated secondary wires, carrying one hundred and ten volts, and below them there was an insulated double strand telephone wire. The surface of the ground sloped downward to the west of the wires. Prior to September 8, 1931, defendant had requested August Johnson, a concrete-work contractor, to construct a foundation for placing a new engine in defendant's power house. To commence doing that work, August Johnson, about an hour and a half before the accident, brought a crew of four of his employees to defendant's premises. The members of that crew were Knute Ogren, Ed Johnson, and Arthur and Gustaf Sandeen, respectively twenty and eighteen years of age, who were college students working for August Johnson during their summer vacation. He directed his crew to first carry some heavy timbers from the power house across that open space on defendant's premises to a place west of the office building. That necessitated passing to the south of the mounted derrick. While at work, during the absence of August Johnson, the crew considered the derrick in their way as they had to turn, while carrying a long and heavy timber, around the southwest corner of the office building. They tried to push the truck toward the east, which was the only vehicular approach to the place where it was standing, but they could not move it because of the upward slope. Later, upon carrying a longer and heavier timber, they found that they could not take it around that southwest corner of the building, without moving that truck. They tried again and had succeeded in moving the truck eastward either five to ten feet, according to the testimony of Ogren and Ed Johnson, or about thirty-five feet, according to testimony which was based on where others had seen

the truck before and after the accident, when a wire cable on the boom of the derrick came into contact with the most westerly of the lower set of the high-voltage wires. Instantly Arthur Sandeen, who had his hands on the iron frame at the rear of the truck, was electrocuted and dropped. To prevent the truck from backing westward because of the downward slope, Gustaf Sandeen grabbed the emergency brake, and he was also instantly electrocuted.

On the day of the accident and some time prior thereto, but after the derrick had been put in that place, the boom had been raised so that a wire cable on the boom extended upward to a position fifteen and one-half feet above the ground. By the manual operation of appliances on the derrick, the boom could be raised to that height or lowered so as to be parallel to the ground, but none of the crew raised or lowered it on the day in question. At the point where the wire on the boom contacted with the high-voltage wire, it was fourteen and one-half feet above the ground. Below, at that point, the secondary wires and the telephone wires were, respectively, twelve and one-half feet and ten feet above the ground. While carrying timbers, the crew had passed under those wires twenty-four to forty times and they were in plain sight, but Ed Johnson and Ogren testified that they did not look up while pushing the truck because that required all of their energy, and that they had not observed the wires. Neither had any of the crew examined the derrick to ascertain whether the boom could be lowered. The testimony by an alleged expert witness, whom plaintiffs called, was that defendant's premises were not as safe as "would be reasonably permitted;" that the height of the wires constituted the unsafety; and that he did not think the defendant had done everything that was reasonably necessary to protect its employees and frequenters. On the other hand, an alleged expert witness called by defendant testified that the premises were as free from such dangers

as the nature of the business would permit, and that they were reasonably adequate to render the place safe for employees and frequenters. The jury in a special verdict found that August Johnson, by and under the terms of his contract with the defendant, was acting and performing his services as an independent contractor; that to protect the life, health, safety, and welfare of employees and frequenters, it was necessary to give warning that the high-tension wires in question were charged with a dangerous current of electricity and suspended at such height above the surface of the ground that the derrick boom could not pass under them without making contact therewith; that the deaths of Arthur and Gustaf Sandeen were the natural and probable result of the failure of the defendant to give such warning, and the defendant ought, as a person of ordinary intelligence and prudence, reasonably to have foreseen that injury might probably follow to some person from such failure to give such warning; that defendant failed to furnish and maintain a place of employment which was as free from danger as the nature of the place would reasonably permit, and the deaths of Arthur and Gustaf Sandeen were the natural and probable result of such failure of the defendant; and that neither Arthur nor Gustaf Sandeen, at the time in question, failed to exercise such care for their own safety as the great mass of boys of their age, capacity, knowledge, discretion, and experience, ordinarily exercises under the same or similar circumstances. Although there are many sharp conflicts in the evidence, we find, upon reviewing the evidence, that it does fairly admit of the jury's findings. Consequently, in view of the well established rule that, if there is any credible evidence which, under any reasonable view, will support or admit of an inference either for or against the claim or contention of any party, it is for the jury to determine what are the proper inferences to be drawn therefrom, and the court should not substitute other answers for the

jury's verdict (*Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741), we are not warranted in setting aside the foregoing findings of the jury.

Defendant contends that under the evidence the court should have held, as a matter of law, that August Johnson was not an independent contractor, and that, as a consequence, Arthur and Gustaf Sandeen are to be deemed employees of the defendant, and that, therefore, there was no right to recover from defendant for their injury otherwise than under the workmen's compensation act. However, the jury's finding in that respect is well warranted, not only because there was evidence in the form of oral testimony that August Johnson retained full 'control as an independent contractor as to who constituted his crew, and where and how the crew was to work, but also because of express admissions in defendant's original answer, that the deceased Arthur and Gustaf Sandeen were employed by August Johnson, and that he "was an independent contractor and had entire charge and supervision of the contract and of the employees working for him, including the said deceased." Even in an amended answer, after omitting that former admission and also in some respects contradicting it, defendant nevertheless alleged "that said Gustaf Sandeen was working with the said Arthur Sandeen and in the employ of said August Johnson, who was an independent contractor." Defendant also contends that the court erred in instructing the jury in relation to the issue as to whether August Johnson was acting as an independent contractor, by referring to him as "contractor Johnson" and also as "the contractor or the employee." However, from the context it is manifest, in each instance, that the word "contractor" was merely being used by the court, at that point, to identify August Johnson, whose business, otherwise, was indisputably that of a contractor. The court's instructions in relation to that issue, when considered in their entirety, are so complete and

explicit that there is no occasion to believe that the jury was misled or that the defendant was prejudiced in that respect.

Defendant duly excepted on the trial to the form of the questions in the verdict in relation to contributory negligence, in so far as they were worded so as to inquire whether either Arthur or Gustaf Sandeen failed to exercise such care "as the great mass of boys of his age," etc., ordinarily exercised. As both were minors, technically the term, "boys of his age," etc., was not incorrect, but instead of using that term the word "person" might well have been used, as requested by defendant. However, in this case it is unlikely that any prejudice resulted to defendant in this respect, or because the court in that connection said in its instructions, "Due consideration should be given to the power and influence of childish instincts." All parties contended, and the evidence is consistently to the effect, that Arthur and Gustaf Sandeen, although, respectively, but twenty and eighteen years of age, were, in point of capacity, knowledge, discretion, and experience, so far above the average of boys of their age that it is improbable that the defendant was prejudiced by reason of the court's use of the words "boys" and "childish instincts."

In relation to the issue of contributory negligence on the part of Arthur and Gustaf Sandeen, the defendant contends that they were guilty of contributory negligence, as a matter of law, in moving the derrick under the wires. In passing upon that contention it must be noted that the evidence admitted of the inferences that it was not readily obvious to one unaware of the situation, that the derrick would not pass under the wires without contact, because it had apparently been moved in under the wires in order to be in the place from which Johnson's crew were shoving it, and there was nothing which indicated that the boom had been raised after it had passed under the wires; and that because the ground where the derrick was standing was somewhat lower

than it was directly under the wires, and there was but little difference in the height of the wires and of the boom, it would seem to the casual observer that the boom would pass under the wires upon shoving the truck to the east. Under those circumstances, the jury were warranted in believing that the attention and concentration of Arthur and Gustaf Sandeen upon the difficult task in hand was such that in the prosecution thereof the boom was brought by them unconsciously into contact with the wire. Certainly that contact did not occur because of any intentional or deliberate act on their part, but resulted rather because of the extent to which they were preoccupied with the work in hand. As was said in *Hodgson v. Wisconsin G. & E. Co.* 188 Wis. 341, 206 N. W. 191:

"A momentary diversion of attention, or preoccupation in the discharge of duties, minimizes the degree of care required in the absence of such diversion or preoccupation. . . . Such diversion or preoccupation so far excuses the exercise of that degree of care ordinarily required as to make it a jury question whether the plaintiff's conduct under the actual circumstances constitutes ordinary care."

Consequently, it was proper to submit the issues as to contributory negligence in the case at bar to the jury.

Defendant contends that the moving of the derrick by Johnson's crew constituted such an independent intervening cause of the injuries that defendant's failure to furnish and maintain a place of employment in compliance with the safe-place statute, and to give due warning of existing dangers, cannot be held to be proximate causes of the injuries. Although the moving of the derrick was an intervening act, which was done voluntarily by Johnson's crew without directions by defendant, it was nevertheless an act which the jury could reasonably find could have been foreseen by the defendant in the exercise of reasonable care, because the evidence admitted of the following inferences: That the re-

moval of the timbers was necessary and that work was left by the defendant for Johnson's men to do. That it was proper to place the timbers west of defendant's office building in order to have them available there on subsequently unloading the new engine from the freight car and moving it to the power house. That it was necessary to move the truck in order to carry the timbers around the southwest corner of the building. That the only way to move the truck out of the way was to shove it eastward. That the ground sloped somewhat downward to the west, and that lack of clearance between the boom and the wires was only about one foot, and was not apt to be noticed by persons who were as unfamiliar as the members of Johnson's crew were with those conditions and the fact that the boom had to be lowered before the truck could be moved in or out of that position. That persons who might undertake to move the truck while otherwise preoccupied, might not appreciate that the boom had to be lowered to avoid contact with the wires which carried a dangerously high voltage current. As, under the circumstances, it cannot be held that the intervening act could *not* have been foreseen by the defendant, and one of the essential conditions, in order to absolve a wrongdoer from liability for his negligence because an independent cause intervenes, is that resulting injury could *not* have been foreseen by the exercise of reasonable diligence on the part of the wrongdoer (*Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271; *Wilczynski v. Milwaukee E. R. & L. Co.* 171 Wis. 508, 177 N. W. 876), it would be error to hold that the injuries sustained were, as a matter of law, so remote that defendant's failures cannot be held to be proximate causes thereof.

Defendant contends that if Arthur and Gustaf Sandeen were not employees of the defendant, but were merely frequenters, it did not owe them the duty, as an employer, to warn them; and that, under those circumstances, it is not

liable in the absence of "affirmative negligence." That contention cannot be maintained. Sec. 101.06, Stats. 1931, expressly provides that:

"Every employer shall furnish . . . a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards . . . reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

In *Washburn v. Skogg,* 204 Wis. 29, 35, 40, 233 N. W. 764, 235 N. W. 437, this court said:

"We cannot perceive that the statute makes any distinction between an employee and a frequenter. (p. 35) The language of the statute is just as mandatory as to frequenters as to employees. Its purpose was to give the same protection to frequenters as to employees." (p. 40)

That was approved in *Mullen v. Larson-Morgan Co.* 212 Wis. 52, 249 N. W. 67, and is in accord with what was said in relation to sec. 101.06, Stats., in *Miller v. Paine Lumber Co.* 202 Wis. 77, 92, 227 N. W. 933, 230 N. W. 702, that the duty to warn "is now embodied in the statutory language and requires such warning when reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

The issue under that statute is whether there was a failure in those respects to comply with the statute either as to an employee or as to a frequenter. If there was such a failure, which was the proximate cause of injury to either a frequenter or an employee, the person chargeable with such failure is liable for those injuries, excepting in so far as recovery is defeated or diminished because of contributory negligence. Consequently, it was not necessary, as defendant contends, to limit the inquiry in the special verdict in respect to whether it was reasonably necessary to give warn-

ing that the high-tension wires in question were charged with a dangerous current of electricity, and suspended at such height above the surface of the ground that the derrick boom could not pass under them without making contact therewith, to merely whether the Sandeens should have been given such warning by the defendant. Likewise, in view of the express provisions of that statute and its applicability to frequenters as well as employees, the court committed no error, as defendant contends, in instructing that the duty to warn is embodied in statutory language and requires such warning when "reasonably necessary to protect . . . employees and frequenters;" that "the statute makes no distinction between an employee and a frequenter;" and that "the statute as a whole surrounds employees and frequenters of places of employment with the same safeguards."

Defendant contends that the court erred in failing to instruct the jury, as defendant requested, that an employer should have actual or constructive notice of defects of repair and maintenance "in order to make him liable for such defects." Such notice was held necessary in *Pettric v. Gridley Dairy Co.* 202 Wis. 289, 232 N. W. 595, because the defect relied upon was the failure to have an electric light, which had been duly provided, lit at the time of the injury, and the fact that it was not lit was not shown to have existed for such length of time as to render the defendant chargeable with notice thereof. However, in the case at bar it is undisputed that there never was any warning given at all, and that the dangerous proximity of wires to the ground had existed such a length of time that defendant was fully aware as to both of those conditions. Furthermore, the record discloses that during the trial defendant, in objecting to evidence which tended to prove notice as to the insufficient clearance under the wires and in having such evidence excluded by the court, proceeded on the theory that proof of such notice was immaterial.

Defendant further contends that because sec. 102.29 (1) (a), Stats. 1931, expressly provides that the making of a claim for compensation shall not affect the right of an employee or his personal representative to maintain an action in tort against any other party for such injury or death, and because sub. (b) of sec. 102.29 (1), Stats., provides that the commencement of an action by an employee or his dependents against a third party by reason of any injury to which the compensation act is applicable, shall not affect the right of the injured employee or of his dependents to recover compensation, and because, in proceedings before the Industrial Commission for compensation to be paid by August Johnson and his insurance carrier, it was stipulated that Arthur and Gustaf Sandeen left no one dependent upon them, therefore the right on the part of the plaintiffs to maintain this action has not been preserved and they cannot do so. That contention fails because the surviving parents' right to recover damages for their pecuniary injury resulting from their sons' deaths is not dependent, in respect to the creation or the preservation thereof, upon sec. 102.29, Stats. 1931. It exists by virtue of secs. 331.03 and 331.04, Stats., and, under a provision in the latter section, their action to recover such damages can be brought by them directly in their own names, because, in view of the instantaneous deaths, there existed no cause of action for pain and suffering, etc., in favor of the estates of the sons. There is nothing in sec. 102.29 (1) (a) or (b), Stats. 1931, in relation to that right of the parents, or that affects that right as created by secs. 331.03 and 331.04, Stats. The provision in sec. 101.29 (1) (a), Stats. 1931, that the making of a claim for compensation shall not affect the right of an employee or his personal representative to maintain an action in tort against any other party, does not mention or refer in any manner to the right of a parent, or other surviving beneficiary, under secs. 331.03 and 331.04, Stats., of an employee. Sec. 102.29 (1)

(a), Stats. 1931, neither adds to nor detracts from the surviving beneficiary's right under secs. 331.03 and 331.04, Stats. Its manifest intent and purpose is to prevent the making of a claim for compensation from affecting prejudicially the right to maintain an action in tort against any other party than the employee's employer. Then why should it by implication or otherwise be construed to operate prejudicially to the rights of parents or other beneficiaries under secs. 331.03 and 331.04, Stats., who are not within the classes mentioned in that sub. (a) of sec. 102.29 (1), Stats. 1931, and in a manner which is wholly foreign to the purpose of the latter section, as to those mentioned therein? Likewise as to sub. (b) of sec. 102.29 (1). That subdivision only mentions an employee or his dependents. It, likewise, does not mention or refer to parents or other beneficiaries under secs. 331.03 and 331.04, Stats., who are not dependents. Its apparent purpose is to prevent the commencement of an action against a third party from affecting prejudicially the injured employee's, or his dependent's, recovery of compensation from his employer. Why then should it be construed to operate prejudicially to the rights of parties who are not within the classes mentioned therein, and in a respect that would be wholly foreign to its purpose as to those who are mentioned therein? No sound reason has been advanced because of which any provision in sec. 102.29, Stats. 1931, should be held to abrogate the right of the plaintiffs as parents to maintain this action brought by them under and as authorized by secs. 331.03 and 331.04, Stats. As pecuniary injury, for which there may be recovery under the latter sections, may be sustained by persons seeking such recovery, even though there exists no such actual dependency as is essential to recover compensation on that ground under ch. 102, Stats., the fact that it was stipulated in proceedings before the Industrial Commission that the deceased left no

one dependent upon them for aid and support, does not bar the parents from recovering for other elements of pecuniary injury, for which there may be recovery under sec. 331.03 or 331.04, Stats.

Defendant also contends that its rights were prejudiced, and a new trial should have been granted, because of improper remarks and argument by plaintiffs' counsel during the trial. The record discloses that the litigation was conducted on both sides with such extraordinary zeal and vigor that there soon developed an unduly belligerent attitude on the part of counsel. As a result, instead of expediting the proceedings at the trial by extending such professional courtesies and mutual accommodations as are usual and proper without prejudice to clients' rights, the record is replete with repeated objections and needless and, at times, caustic repartee. That, in some instances, may have affected the cause of the counsel by whom it was voiced as unfavorably as it did the cause of the adversary. However, it appears that in most instances there was such provocation for the remarks and argument under review that both must be considered responsible therefor, and hence neither party is in position to avoid the results of the trial on that ground.

Error in refusing to grant a new trial is also assigned on the ground that the jury was improperly influenced by misconduct during the trial on the part of a woman who, although not a member of the jury that tried the case, was on the term panel, and who, without having any occasion to be in court during the trial herein, attended all sessions thereof, and, in the presence of the jurors, manifested an undue personal interest in favor of one of the attorneys for plaintiffs, as well as their cause. Her activities were brought to the court's attention during the course of the trial, as well as on motions after verdict. She and all the jurors with whom she was charged to have associated all denied under

oath that anything had occurred which improperly influenced them in relation to the trial. The record discloses that her conduct may have warranted severe criticism. However, although the trial court fully appreciated the importance and necessity of protecting the jury from any improper influence and preserving the purity and integrity of jury verdicts in accordance with decisions in *La Valley v. State*, 188 Wis. 68, 205 N. W. 412, and *Bangor v. Hussa C. & P. Co.* 208 Wis. 191, 242 N. W. 565, the court, after extended consideration, found that nothing was said or done by that woman, or plaintiffs' counsel, which did or could have improperly influenced the jury in its consideration or decision of this case, or by virtue of which she was able to make any contact with the jurors, or attempt in any way to influence them in their consideration or decision of the case, or to make any report concerning their attitude on any subject to any person, or that she had done so. In view of the conflict in the proof submitted in relation to those matters, we cannot hold that the court's findings are erroneous, or that there was an abuse of discretion and prejudicial error in declining to grant a new trial on that ground.

After due consideration of all other alleged errors, including those asserted on plaintiffs' motion to review, we find none that were prejudicial in any respect, excepting in respect to the damages recoverable by Carl and Hanna Sandeen on account of their pecuniary loss. On that subject defendant contends that the jury's award of $7,500 as damages for pecuniary injury sustained by the parents as to each of the deceased is so excessive that defendant is entitled to a new trial. In addition to those awards, the jury assessed the parents' damages for loss of society and companionship at $1,500 for each son, but defendant concedes that those assessments were within the discretion of the jury. At the time of the accident the deceased were, respectively, eighteen and twenty years of age. They were survived by

two brothers, aged twenty-four and seventeen years, respectively. The age of the father was fifty-three years, and his expectancy was 18.79 years. The mother's age was fifty-one years, and her expectancy was 20.20 years. The father was a carpenter, and prior to 1931 his yearly earnings had been about $1,400. They dropped to $1,051 in 1931, and to $892 in 1932. He owned a home commensurate to his earning, which was unincumbered excepting for a mortgage to secure $1,000, which he had borrowed to discharge obligations incurred by reason of the sons' deaths. All of the members of the family were industrious, sober, economical, and thrifty. They were affectionate, and there existed between them proper appreciation and regard for their mutual welfare. The parents had all of the sons attend high school, and all, with the exception of the youngest, had been graduated, and were continuing as college students up to the time of the accident. While attending high school and college, each of the deceased had been permitted by the parents to apply all of his earnings, while working during the vacations, and which amounted to about $1,100 from 1929 to 1931, to defray expenses at school and college. The older surviving brother testified that, in conversations in the absence of the parents, both of the deceased had said that, as the parents were getting old and had given all that they had, without saving anything for themselves, in order that the sons could be well educated, they were going to pay back all that they had received from the parents, and were also going to pay for their board and room while they stayed at home; that they would not marry until they could pay back all their debts, with interest; and that they were going to see that the parents lived in comfort the rest of their lives. That testimony was objected to by defendant, but as it tended to establish an existing intention and disposition on the part of the deceased to recognize their moral obligations to the parents, and to respond fully to the latters' needs,

it was admissible. *Andrzejewski v. Northwestern Fuel Co.*
158 Wis. 170, 148 N. W. 37. After the accident the parents
repaid a student's loan of $258.75 advanced to Arthur San-
deen by a charitable foundation, and they also paid $335.50
for funeral and burial expenses for each deceased son. Those
disbursements total at $930, but under an award by the
Industrial Commission the parents were repaid, on account
of the funeral expenditures of each son, the sum of $200 by
August Johnson's insurance carrier. As the latter is en-
titled to recover the amount of those payments from the
defendant, the latter would be compelled to pay those
amounts twice, if the parents were also permitted to collect
twice to the extent of those payments. Consequently, the
amounts which have been received by the parents on that
account, under the compensation act, must be deducted from
the disbursements for which the parents can still recover
from the defendant. The declarations of the deceased re-
garding their intentions to repay the parents for moneys
advanced and earnings which the deceased were permitted
to keep, etc., were not proven to have been communicated
to the parents or to have resulted in enforceable contractual
obligations on the part of the deceased for repayment there-
of. Likewise, the parents had allowed the deceased, with-
out any contract for repayment thereof, to collect and use
their earnings, and as it appears probable that they would
have been allowed to continue to do so during the unexpired
period of their minority, it is improbable that the parents
would have commenced to receive anything on that account
during the remaining period of the minority of the deceased.
Consequently, the only evidence which affords any legal
basis for an award of damages for pecuniary loss, aside
from the proof as to the definite unpaid balance of the par-
ents' disbursements after the deaths, is quite general in its
nature. However, such evidence is considered competent
in cases of this kind in so far as it indicates "present or
probable future dependence of the ancestor upon pecuniary

assistance from the child, competency and disposition to respond to parents' needs, and the probable extent of such needs." *Andrzejewski v. Northwestern Fuel Co., supra.*

However, as was said in that case, the "compensation must be limited to only such as will measure the reasonable expectancy, as shown by the evidence, which the parent had at the time of the fatal event of pecuniary contributions by the child during the continuance of the joint lives, in view of the parent's age, the need upon the one side, and the competency and disposition on the other, having due regard to the habits, the previous accomplishments, the ability and disposition to work and earn money, the present possessions, the liability to have personal family needs, and all other circumstances bearing on the question."

With that rule in mind, analysis of the awards of $7,500 for pecuniary loss as to each deceased son, discloses that those awards probably exceed the parents' reasonable expectancy to such an extent that they cannot be sustained. The amount remaining of the $7,500 award, after deducting the parents' disbursements in paying Arthur's student loan and his funeral expenses, is over $7,000; and the amount remaining as to Gustaf is even more. But taking $7,000 as the balance in relation to each, and merely applying the principal, without any regard to the interest which it could be earning, would allow the father $388 per year for each of his eighteen years of expectancy, and the mother $350 per year for each of her twenty years of expectancy. Or, if instead of distributing the principal, only the interest at five per cent. per annum were used, each would derive an income of $350 per year from those awards, without any depletion whatsoever of the principal. Furthermore, as, on the one hand, the deceased were about to enter upon their second and third years at college, and were but eighteen and twenty years of age, respectively, and, on the other hand, their older brother, at the age of twenty-four years and still in college, had not yet commenced to contribute anything toward the parents'

support, it is very doubtful that the deceased, if they had survived, would have commenced to contribute to their parents until after they had completed their college work. That would have postponed the receipt by the parents of anything from those sons during the earlier years of the parents' expectancy, and in that respect would have reduced the remaining period of their expectancies to such an extent that the amounts distributable annually under any of the foregoing hypotheses and calculations would be even greater. However, although the awards are excessive, that fact does not, under the circumstances in this case, necessarily indicate prejudice or perverseness on the part of the jurors, in view of the unavoidable difficulties which they undoubtedly encountered because of the very general nature of the evidence which in this class of cases has usually to be relied upon to establish future pecuniary loss. Consequently, although the awards and the judgment, in so far as it is based thereon, cannot be sustained, we considered it proper in reversing the judgment, in so far as Carl Sandeen and his wife are concerned, to give to them (under the established practice, *Risch v. Lawhead,* 211 Wis. 270, 248 N. W. 127), the option—in lieu of the granting of a new trial on solely the issue as to the amount of their damages—of taking judgment on the first and second causes of action for a total of $11,000, with interest and costs, as the lowest amounts which an unprejudiced jury acting reasonably would probably award.

*By the Court.*—Judgment affirmed in so far as it provides for recovery by the Travelers Insurance Company. Judgment reversed in so far as it provides for recovery by Carl Sandeen and Hanna Sandeen, and cause remanded with directions to grant a new trial on solely the issue of the amount of damages recoverable by them, unless they shall elect to take judgment for the amount stated in the opinion.