**Edmund BALCHUCK, Plaintiff-Appellee,**

v.

**SEARS, ROEBUCK AND CO., a corporation, Defendant-Appellant.**

**No. 14175.**

United States Court of Appeals
Seventh Circuit.

Oct. 29, 1963.

Leo H. Arnstein, Chicago, Ill., Suel O. Arnold, Milwaukee, Wis., Burton Y. Weitzenfeld, Edward J. Kahn, Chicago, Ill., for appellant.

Stephen R. Miller, Milwaukee, Wis., for appellee.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendant Sears, Roebuck and Co., a foreign corporation, having its home office in Chicago, Illinois, has appealed from a judgment for $59,908.09 entered in the district court in favor of Edmund Balchuck, plaintiff, an employee of Builders Specialties, Inc., against defendant on the verdict of a jury.

Plaintiff charged that he was injured when he fell from a ladder on which he was working upon defendant's premises due to its alleged negligence.

The jury by a special verdict attributed the negligence constituting an efficient cause of the accident 80% to defendant and 20% to plaintiff.

For reversal defendant maintains (1) it was error to give the jury an instruction relating to the applicability of the Wisconsin safe-place statute, and (2) as a matter of law plaintiff's negligence was more than fifty per cent responsible for the accident he suffered.

There is very little dispute in the record as to the facts.

The place of the accident was defendant's automotive service garage in Milwaukee, Wisconsin. It has nine entrance and nine exit doors of the overhead type which operate by moving upward from the closed position perpendicular to the ground to an open position above the doorway. Each door contains six glass windows in a line, the panes being 12 inches wide by 18 inches high with about 2½ inches between each pane. At the time of the accident, on December 19, 1958, the windows were intact and clean.

Perhaps as early as 1944, the doors were installed by plaintiff for an independent contracting firm, Builders Specialties, Inc., by whom plaintiff had been employed since 1937. Plaintiff worked exclusively during this period in the installation and servicing of overhead doors of the type here involved and remodeling carpenter work relating to the operation of this type of door, and did all of the servicing work on the doors here involved. Plaintiff was the lead man for his employer in connection with the servicing of these doors.

During the afternoon of December 19, 1958, the day of the accident, plaintiff responded to a request for service which had been given to Builders Specialties, Inc. by the defendant several days before. Mr. Mysak, superintendent of the service station, indicated to him that all of the doors needed servicing.

On all of the numerous occasions on which plaintiff had serviced these doors prior to the date of the accident, he had parked his truck in front of the door on which he was working so that it would act as a barricade and for his protection.

On this particular occasion he was told that he could not do so because of the lateness of the hour and the tremendous activity in defendant's service station. Plaintiff stated that, without so using his truck, the place in which plaintiff proposed to work was "dangerous" and was a "booby trap". He stated that he was told by Mysak "Don't worry about that; we'll work around you." Notwithstanding this statement plaintiff knew that Sears' employees placed no barricades for him during the hour and a quarter that he was working on the doors prior to the accident, and, in addition, during the period when he was working prior to the accident he saw no protection provided for him by defendant.

He was aware that there were no pass doors in any of the overhead doors to permit entry without raising the door when it was closed. There was a passage door through which a person could walk without using an overhead door. Plaintiff did not put any sign on either side of the door on which he was working. He did not ask any of defendant's employees to hold his ladder for him, or to stand outside the door to guard the door, or to stand near the ladder while he was working inside the door.

The service station was very busy, there being much greater activity than on any other occasion when plaintiff had made his repair calls previously. The place was the busiest he had ever seen it. He was aware that about twenty employees of the defendant were working about the premises at the time. Plaintiff knew Loren Bergman, an employee of the defendant, that he was a salesman, and that his work required his constantly going in and out of the service station.

Plaintiff started working on door #1. His procedure was to set up his ladder on the inside of the door between it and the grease pit. There were no cars on

the grease pit opposite door #4 where plaintiff was working at the time of the accident. Plaintiff was injured, while working on a ladder, when Bergman opened that door from the outside, causing plaintiff to fall from the ladder. Bergman knew plaintiff was on the premises because he saw him standing by #1 door.

In this court defendant contends that, accepting the testimony of plaintiff and his witnesses as a fact, the district court erred in not granting defendant's motion for a directed verdict at the close of all of the evidence, in entering · judgment for plaintiff on the basis of the jury's apportionment of the negligence, and in overruling defendant's motion for a judgment notwithstanding the verdict. Defendant asks that we reverse the judgment of the district court.

Plaintiff answers that the district court correctly determined that the Wisconsin safe-place statute was applicable and did not err by giving instructions thereon, to which defendant replies that there was no violation of the safe-place statute by defendant as the *owner* of a place of employment; that defendant was guilty of no. negligence at common law; and that plaintiff was guilty of gross misconduct in proceeding with knowledge of a known hazard, a "booby trap", without taking any precautions required of him in the exercise of due care.

1. We refer to the following excerpts from Wisconsin Statutes, 1961, Title XIII, Chap. 101.

> "101.01 * * * (1) The phrase 'place of employment' includes every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, * * *.

* * * * * *

> "101.01 * * * (5) The term 'frequenter' shall mean and include every person, other than an employe, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser.

* * * *

> "101.06 **Employer's duty to furnish safe employment and place.** Every employer * * * shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof * * and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters * *."

In Neitzke v. Kraft Phenix Dairies, Inc., 214 Wis. 441, the court, at 445, 253 N.W. 579, at page 581 (1934), held that the employees of an independent contractor doing work upon the premises of an employer are "frequenters" within the terms of the statute, citing Sandeen v. Willow River Power Co., 214 Wis. 166, 252 N.W. 706 (1934).

In Neitzke, 214 Wis. at 446, 253 N.W. at 582, the court considered the contention that when the owner has done everything necessary to render his premises reasonably safe and to provide against injuries resulting from acts which he could reasonably foresee, his duty to employees and to frequenters is fulfilled. The court said:

> "A *reasonable* interpretation of the statute as it applies to frequenters, is that the employer's duty is to make the premises safe *for the performance of acts which he knows or reasonably should know are going to be performed thereon*. There are early decisions cited by appellant to the effect that the statute does not make the owner an insurer or absolutely liable for all injuries to employees or frequenters, but this does not preclude employees and frequenters from recovering merely because they may not have exercised the highest degree of caution, for

their conduct is to be measured by the ordinary standard of care. If the employee or frequenter has lived up to that standard and is injured as the result of the unsafe condition of the place to work against which the owner of that place could reasonably have protected him, liability follows that failure on the owner's part." (Italics supplied.)

In the case at bar the evidence shows that both plaintiff, the frequenter, and defendant, the employer, were aware of the potential danger involved in plaintiff's operation but that defendant prevented plaintiff from protecting his own safety while he worked by refusing him permission to park his truck in front of the door on which he was working, as a protective barricade, with the assurance by defendant's superintendent, "Don't worry about that; we'll work around you". Plaintiff being thus engaged in the performance of his work in a hazardous position, defendant defaulted in its assurance of safety and one of its own employees, Bergman, who knew that plaintiff was working on the premises, decided to enter the garage, but refrained from using a pedestrian door and instead lifted door #4 upon which plaintiff was working, causing him to fall.

On these facts, under a proper instruction from the court [1] the jury having answered the fifth question "Yes", was justified in finding a violation of the safe-place act.

The jury might justifiably have felt that, without interference with its garage service operation, defendant could have allowed plaintiff to use his truck as a barricade, or that defendant could have warned its employees of plaintiff's presence and told them to use only the pedestrian passage door. Defendant took no steps to place a barricade, or a safeguard, or to allow the work to be done after hours.

1. The court instructed the jury, *inter alia:*
"The Fifth Question of the Special Verdict reads as follows:
" 'Was the defendant, Sears, Roebuck & Co., through its agents and employees, negligent in its duty to use or permit to be used safety devices and safeguards, adopting such methods and processes reasonably adequate to render the place of employment of plaintiff as safe as the nature of the premises reasonably permitted?'
"This question, No. 5, inquires whether the defendant, Sears, Roebuck and Company, through its agents and employees, at the time and place in question, was negligent with respect to its duty to maintain a place of employment as safe as the nature of the premises reasonably permits.
"The Safe-Place Statute, Section 101.-06 of the Wisconsin Statutes provides: [Here statute is quoted].
"You are further instructed that the place where plaintiff, Edmund Balchuck, was injured was a place of employment within the meaning of the statute I just read, and that the plaintiff was a frequenter within the meaning of the statute, and lawfully on the premises.
"The term 'safe,' as applied herein, means such freedom from danger to the life, health, safety or welfare of employes or frequenters of the building as the nature of the employment and the place of employment will reasonably permit.
"Although the statute imposes an absolute duty to make the place as safe as the nature and place of employment will reasonably permit, it does not require an employer or owner of a place of employment to do the impossible or the unreasonable in maintaining its premises in a safe condition. For instance, an employer is not required to make more safe a structure that is as safe as the nature of employment and place of employment would reasonable permit, for any structure, safe as it might be can be made more safe. The statute does not make an employer an insurer or guarantor of safety. An employer's duty to furnish a safe place of employment is met when he furnishes a place that is as free from danger as the nature of employment and the place of employment would reasonably permit.
"If you find that the defendant was negligent in failing to use safety devices and safeguards or adopting methods with a view to plaintiff's safety or that it was negligent in failing to permit the use of proper safety precautions, then you are to answer the question 'Yes.' If you do not so find, then you are to answer the question 'No.' "

**146**

Defendant relies on Asen v. Jos. Schlitz Brewing Co., 11 Wis.2d 594, 106 N.W.2d 269 (1960), where Asen, employed by O. D. Sign Company, was working on a sign in a stooped position when he accidentally fell to the ground. The court held, 11 Wis.2d at 602, 106 N.W.2d at 273, that the claims asserted under the safe-place statute, with respect to the area of the sign and the painting operations, pertained only to the responsibilities of the Schlitz Brewing Co. as an owner, and not to its broader duties of an employer.

 In contrast, in the case at bar, defendant's responsibility to plaintiff under the same-place statute with respect to the work in which he was engaged at the time he was injured was that of an employer to a frequenter working in its place of employment. Accordingly, there is no issue in the case at bar as to a danger due to any unsoundness of a structure, which was pertinent in Asen, because the defendant Schlitz was there sued as owner. Accordingly, defendant is not justified, in its brief, in relying on Asen to support its conclusion:

> " * * * the danger in this case was not due to any unsoundness of the structure (the service station and the doors) and that the provision of a device which would have made the area safe for a repairman employed by an independent contractor (plaintiff) was the duty of his employer (Builder Specialties, Inc.) and not the duty of the defendant (Sears).
>
> "The standard of care required of an *owner* is not as great as that owing by an *employer* under the Act. * * * "

2. Defendant contends that plaintiff's negligence was clearly and demonstrably more than fifty per cent responsible for the accident, and hence a directed verdict for defendant was required under Wisconsin law. In its brief it is admitted that on this issue it has been held in Quady v. Sickl, 260 Wis. 348, 352, 51 N.W.2d 3, 5 (1952), that "No more can be read out of the precedents than that

each case must be considered upon its peculiar facts".

 In view of what we have said and the fact that, when plaintiff called Mysak's attention to the place in which plaintiff was to work and described it as "dangerous" and a "booby trap", he was assured by Mysak not to worry about it and that "we'll work around you", we would not be justified in holding that, as a matter of law, the negligence of plaintiff was more than fifty per cent responsible for the accident. If we sanctioned a directed verdict for defendant on this basis, we would be invading the province of the jury on a disputed question of fact.

For these reasons, the judgment of the district court is affirmed.

Judgment affirmed.