WASHBURN, Respondent, vs. SKOGG and another, Appellants.

*November 11, 1930—March 10, 1931.*

For the appellants there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

For the respondent there was a brief by *North, Parker, Bie, Duquaine, Welsh & Trowbridge,* attorneys, and *Samuel D. Hastings* of counsel, all of Green Bay, and oral argument by *Walter T. Bie.*

The following opinion was filed December 9, 1930:

FOWLER, J. The submission of the case to the jury was upon the two grounds laid in the complaint: (1) violation of an order of the industrial commission requiring a handrail to stairways; (2) violation of the safe-place statute. The jury found for the plaintiff upon both grounds.

(1) The defendants contend that the evidence shows that the means of access to the storeroom is not a stairway but a ladder. Thirty pages of defendants' brief are devoted mostly to argument in support of this contention and eighteen of plaintiff's to show that it is a stairway. Space does not permit statement in detail of the respective claims. The structure must be a stairway or a ladder within the purview of the industrial commission's order. We consider that by reason of its construction and pitch it more nearly approaches the common concept of a stairway than of a ladder. This concept of a ladder is that it consists of side pieces about four inches wide with rungs or rounds spaced between, the ends of which are inserted into holes bored through the cen-

ter line of the side pieces, or of side pieces of such width with cleats across, either nailed or screwed flush with or mortised into one edge of the side pieces, which when in use rises at an angle so near the perpendicular that in using it one stands erect or practically so facing the structure and takes hold of the rungs or cleats or side pieces in order to keep his balance and goes hand over hand. Under this concept the structure is not a ladder. No more is it a ladder under the concept given in order 3500 of the industrial commission referring to movable ladders, which describes a ladder as a framework of parallel stringers to which are substantially attached horizontal cleats or rounds (rungs) uniformly spaced. The cross-pieces here involved are not cleats. They are boards and form steps. Nor is it a ladder under order 3515 of the industrial commission referring to ladders used temporarily during construction work, which must extend at least three feet above the floor to which they lead. On the other hand it more nearly satisfies the common concept of stairs in that it has board steps instead of rungs or cleats and one would naturally face away from it in descending and would not stoop to take hold of the side or steps in using it. The jury were not bound to accept the opinion of the architect, who testified that it was a ladder because it did not have risers and did not reach from one main floor to another, and was within the angle at which a ladder may be placed for use. It may as reasonably be said that a structure rising at an angle of seventy-five degrees is a stairway, as that one rising at an angle of fifty degrees is a ladder, as order 422 of sec. C of the Elevator Code uses the term "stairway" in referring to means of access to penthouses of that pitch. The structure is within the description of what was called a stairway in *Sweet v. Ohio Coal Co.* 78 Wis. 127, 47 N. W. 182. The idea of the architect who testified was not in accord with the statement in Sturgis, Dictionary of Architec-

ture and Building, that "no absolute distinction can be made between stairs and ladders." Vol. 3, p. 594.

In this situation, in determining whether a structure is one thing or the other within the meaning of an order of the commission, as in case of statutes, the purpose of the order must be considered. *Kosidowski v. Milwaukee,* 152 Wis. 223, 139 N. W. 187. It was the manifest purpose of the order to require a hand-hold in all cases. When the pitch is so steep that one may conveniently grasp the sides for a hand-hold, the contrivance may properly be considered a ladder. But when the pitch is such that one may not conveniently grasp the sides or steps for a hand-hold, a hand-rail is necessary for safety, and in such case the contrivance is a stairway. We consider that whether the structure here involved is a stairway was a jury question and that the jury's finding cannot be disturbed.

(2) Upon the other phase of liability, violation of the safe-place statute, lack of a railing on the open side of the room or platform may properly be considered in connection with the stairway in determining whether the statute was violated. The statute, sec. 101.06, requires that employers shall furnish places of employment "as free from danger as the nature of the employment will reasonably permit." *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650. Even if the structure were considered as a ladder, the presence of a railing at the floor edge on the open side or projection of the side pieces above the floor or the presence of a hand-rail might well be considered necessary for safety. The presence of any one of these would have provided a hand-hold, thus making the place safe for use as a ladder for a few steps at least by facing the structure in descending. We consider that the finding of the jury was warranted. It is urged in this connection that the complaint did not allege absence of railing at the front of the platform or absence of

projection of the side pieces above the floor as a violation of the statute. But the physical facts are plain and without dispute and all admitted and all admissible under defendants' theory that the device is a ladder. If the defendants are to escape liability on the ground that the contrivance is a ladder, it must be so placed and so safeguarded as a ladder as to preclude the jury from finding that it is not safe for use as such. Under the physical situation, one in descending would naturally use the structure as a stairway rather than as a ladder—that is, start down facing forwards or away from the structure instead of towards it, and for such use some one of the three safeguards may well be considered necessary to conform it to the statute.

(3) The jury found that the absence of a hand-rail and the failure to conform to the safe-place statute were each a cause of plaintiff's fall. These findings were justified. The jury might well find that if a hand-hold had been provided the plaintiff would naturally have grasped it with his free hand and the accident would have been prevented. Both violation of the statute and causation, and both violation of the commission's order and causation being found, liability would result as matter of law were the injured person an employee, in absence of contributory negligence. *Rosholt v. Worden-Allen Co., supra; Connolly v. Waushara Granite Co.* 162 Wis. 522, 155 N. W. 921; *Kielar v. Fred Miller B. Co.* 165 Wis. 237, 240, 161 N. W. 739.

(4) Defendants strenuously urge that the plaintiff by voluntarily using the stairs assumed the risk of injury. An injured employee does not assume the risk of injury by working in an unsafe place. *Beck v. Siemers,* 174 Wis. 437, 183 N. W. 157. This is conceded by defendants' counsel, but it is contended that a mere volunteer should not be so shielded. We cannot perceive that the statute makes any distinction between an employee and a frequenter. It re-

quires that an employer shall furnish a place that "shall be safe for employees therein and for frequenters thereof, and shall do every other thing reasonably necessary to protect the . . . safety . . . of such employees and frequenters." A frequenter is any person not an employee "who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser." Sec. 101.01 (5). The same statute, sec. 101.06, covers both places of employment and public buildings. The same duty of safety is placed upon employers and owners of public buildings. *Zeininger v. Preble,* 173 Wis. 243, 246, 180 N. W. 844. A tenant of a public building does not assume the risk of injury by use of a stairway violative of an order of the industrial commission. *Kelenic v. Berndt,* 185 Wis. 240, 201 N. W. 250. The statute as a whole purports to surround employees, tenants of public buildings, and frequenters of places of employment with the same safeguards, and no reason is perceived why it should not be construed to afford them the same degree of protection and the same freedom from assumption of risk. The statute having made no distinction, it is not for the court to make any. As said in *Wilson v. Evangelical Luth. Church,* 202 Wis. 111, 230 N. W. 708, in speaking of the same statute: "It is peculiarly within the province of the legislature to determine questions of public policy." It is urged that the state constitution continues the common law in force except where changed by statute, and that assumption of risk was a defense at common law. Passing the question whether at common law this defense existed in any case except where the parties were under contract relation with each other (this court held that it does not exist except in such cases in *Knauer v. Joseph Schlitz B. Co.* 159 Wis. 7, 149 N. W. 494), it is sufficient to say that we consider that the instant statute changes the common law if it was or is as contended for by defendants.

(5) It is urged that the answers of the jury to questions (4) and (9), whereby they found that the defendant ought and the plaintiff ought not to have foreseen that some injury might probably result from using the stairway in the condition it was in, are inconsistent. But the situation of the parties was different. The defendant was familiar with the structure and used it frequently. The plaintiff had used it only a few times. He might properly assume it to be safe without giving it especial consideration or attention. The defendant descended rapidly just ahead of the plaintiff, which would tend to give the plaintiff assurance of its safety. We consider that these distinctions warrant different inferences respecting anticipation of injury.

(6) It is contended that the evidence establishes conclusively contributory negligence of the plaintiff as distinguished from assumption of risk. The question put covers the proposition of due care under the rule of *Hamus v. Weber*, 199 Wis. 320, 226 N. W. 392. Does the evidence warrant an inference of due care by plaintiff in the manner in which he attempted descent of the stairs? In view of the unhesitating, direct, and rapid way in which defendant ran down ahead of plaintiff and the fact that it may properly be inferred that plaintiff was somewhat absorbed in the details of the order which he had taken and just finished writing down in his order book, we consider that the court might properly find him free from negligence. The plaintiff assayed the use of the structure as a stairway in the manner that stairways are ordinarily used. It apparently was a stairway. The defendant went down in the manner one goes down stairs. The plaintiff might rightly assume that it was safe for use as stairways are used. The electric light had just been turned off. · While the place was not dark, the natural light was not bright and, coming direct into plaintiff's face as he started down, was somewhat deceptive or at least rendered objects

indistinct to eyes accustomed to the brightness of the electric light. This may be inferred although not testified to directly. It did not occur to plaintiff that there was danger. Negligence is fully as clearly a jury question here as in *Hommel v. Badger State Inv. Co.* 166 Wis. 235, 165 N. W. 20, where plaintiff in entering the vestibule of a building on opening an inner door that opened into a lobby assumed the lobby was on a level with the vestibule and stumbled and broke her leg. It is there said:

"One is not bound absolutely to see every defect in his pathway which is plainly observable. . . . Any reasonable excuse, in view of the whole situation, for not doing so is sufficient to raise a jury question in regard to the matter. Such slight circumstances may be fairly considered by a jury to be sufficient, that the issue in regard to such a matter is seldom taken from the jury."

There is no direct testimony to the precise point that plaintiff's attention was diverted, but direct proof of diversion of attention in such cases is not required. "Evidence of circumstances from which such diversion is fairly inferable is sufficient." *Hommel Case, supra,* pp. 241, 242. We consider negligence of plaintiff was a jury question here.

(7) Defendant lastly urges that a new trial should be ordered because of improper remarks charged to have been made by plaintiff's counsel in his argument to the jury. Some seven specific charges of such argument are made and one blanket charge of "other improper argument as appears from exceptions taken and appearing from minutes of the court." We find nothing in the record to show that any of the alleged improper arguments were made, except as follows:

"In the closing argument of Mr. Bie he said: 'That it is the same old defense that is being urged by railroad companies (insurance companies) trying to get out of liability for years and years.'
"Mr. Wilkie objected to that line of argument.

"The Court: The court will rule that it is improper and has no bearing on the issues submitted to the jury.

"Mr. Bie continues argument.

"Mr. Wilkie: That part of the letter which I offered is received in evidence and that was all that was offered.

Mr. Bie: I offered all the exhibits, which includes this letter.

"Mr. Wilkie: Such a thing as that is unfair. The only thing offered was part of that letter—counsel, by making that offer, cannot now claim that he was offering other parts.

"The Court: The letter is limited to those parts offered in evidence. Counsel had the opportunity of offering other parts. . . .

"Mr. Wilkie again objects to Mr. Bie's closing argument, as follows:

Mr. Wilkie: It was to the effect that he knows Earl Skogg and the jury knows Earl Skogg, and that he pays his obligations—and also that Earl Skogg was one of the best friends he (Bie) had in the world—and move that that be held improper.

"The Court: The court will rule that they are improper and the exceptions are well taken."

There is nothing in the record above quoted to show that what occurred in connection with the letter referred to was prejudicial. While what was said about railroad companies and Mr. Skogg might better have been left unsaid, we do not consider that it warrants reversal of the judgment.

*By the Court.*—The judgment is affirmed.

The following opinion was filed March 10, 1931:

*On Motion for Rehearing.*

Fowler, J. Counsel for appellants complain that the opinion of the court pays no attention to their argument that the doctrine of assumption of risk does not apply to frequenters and ignores the history of the safe-place statute as expounded by them in their original brief. Perhaps the opin-

---

ion should have pointed out that the history of the statute supports rather than refutes the court's conclusion. The safe-place statute was not incorporated in the workmen's compensation act. The latter was enacted as ch. 50 and the former as ch. 485 of the Laws of 1911. The latter was intended to supplement the former, but there was no limitation of its application to employers having three or more employees as ch. 50 was limited. As pointed out in *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 175, 144 N. W. 650, its application is limited only by the terms of the act itself, and the only exception to its application is that it does not apply to employees engaged in private domestic or agricultural service not involving mechanical power. It is therefore of much wider application than the compensation act, and the provision of that act in respect to abrogating the defenses of negligence of a fellow servant and the assumption of risk is no part of it and is not a basis for the ruling that by the safe-place statute it was intended to abrogate that common-law doctrine as to employees. That ruling is based upon the mandatory language of the statute itself. It imposes absolute liability like the statute requiring railroad companies to fence their tracks as pointed out in the *Rosholt Case, supra.* As said in the *Rosholt Case,* page 175: "The statute . . . imposes an absolute duty upon the employer to make the place of employment as free from danger as the nature of the employment will reasonably permit, and in the absence of contributory negligence the liability of the master follows as a matter of course if this duty is not performed and injury results to the employee because it is not performed." The language of the statute is just as mandatory as to frequenters as to employees. Its purpose was to give the same protection to frequenters as to employees. To yield the same protection, assumption of risk, if that term is applicable in case of non-contractual relations, is abrogated in case of frequenters just as it is in case of employees. We do not attach special significance as distinguishing between em-

ployees and frequenters to the opening clause of sec. 101.07 that no employer shall permit an employee to go or be in a place which is not safe. The next clause of the section imposes precisely the same obligation to conserve the safety of frequenters as of employees. In our opinion it would be far-fetched indeed to ground a distinction as to assumption of risk between employees and frequenters upon this language alone. We adhere to the statement of the original opinion to the effect that the legislature (by ch. 485, Laws of 1911) changed the common-law rule that frequenters assumed the risk of injury from going into an unsafe place, if there was such a common-law rule as to them, and that the court has not assumed to change it.

The motion for rehearing is denied, with $25 costs.