MULLEN, by guardian *ad litem,* Appellant, vs. LARSON-
MORGAN COMPANY, Respondent.

*May 9—June 6, 1933.*

54

L. J. *Fellenz* of Fond du Lac, for the appellant.

For the respondent there was a brief by *Duffy, Duffy & Hanson* of Fond du Lac, and oral argument by *Russell E. Hanson.*

FOWLER, J.  The appellant claims that as matter of law (1) the defendant violated the safe-place statute and (2) the plaintiff was free from contributory negligence; and that the answers of the verdict bearing upon these issues should have been changed and judgment entered for plaintiff upon the amended verdict.  He also claims that if he is not thus entitled to judgment in his favor he is entitled to a new trial because (3) the question submitted to the jury to cover the issue of the defendant's negligence did not properly submit that issue under the safe-place statute.  We will consider these claims in the reverse order of their enumeration above.

(3) The case was submitted with view to procuring a determination whether the defendant violated sec. 101.06, Stats., commonly referred to as the "safe-place statute," which requires that places of work shall be made safe for employees and frequenters; and the term "safe" in this section is defined by sec. 101.01 (11), Stats., as "such freedom from danger to the safety of the employees and frequenters as the nature of the employment or place of employment will reasonably permit." The question submitted as covering violation of the statute was: "Did the temporary planking under all the circumstances present require wiring, nailing, or fastening in some manner in order to render the place where plaintiff was working a *reasonably safe place in which to work?*"

It has been pointed out in several decisions of this court, beginning with *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650, that the duty imposed by the safe-place statute changes the common-law measure of duty to furnish a reasonably safe place and imposes the higher duty of furnishing a place as safe as the nature of the employment will reasonably permit. The question submitted to the jury inquired whether the defendant had performed its common-law duty. It did not meet the issue of statutory duty. To cover the issue of performance of statutory duty by the defendant, the concluding phrase of the question above italicized should have been, in substance, in the language of the statute, "as free from danger as the nature and place of employment would reasonably permit," or should have used the word "safe" instead of the words "reasonably safe," and instructions should have been given defining the word "safe" as it is defined in the statute. Neither the language of the question itself, nor this language in view of the instructions given in connection with it, correctly expresses the duty of the defendant under the statute. The charge in spots does say that the statute requires that the place of employment

shall be made as free from danger as the employment will reasonably permit and as the nature of the work will reasonably permit, but other portions of the charge contradict this statement. For instance it is said in the charge that the statute requires that the employer shall adopt safeguards "reasonably adequate to render the employee and place of employment safe *to the final end that all reasonable care* shall be taken by the employer to protect the safety of employees." It is also said that:

"Places of employment and appliances are safe within the meaning of this statute when they are so constructed and in such condition that considering the nature of the employment conducted therein and *the manner in which it is customarily carried on, or the manner in which an ordinarily careful and prudent man might reasonably anticipate it might be conducted,* making it as free from danger as such employment and such use will reasonably permit. The safety required by this statute is not absolute safety, but the term is a relative one. The statute requires such freedom from danger to the life or safety of workmen or frequenters as the nature of the work would reasonably permit, *in view of the manner in which the work is customarily carried on and in view of what might reasonably be anticipated as the manner in which it will be carried on.*"

The statements above italicized all incorporate the common-law ideas of reasonable anticipation, ordinarily careful and prudent men, compliance with customary methods, and reasonable care. Compliance with these concepts does not satisfy the statute. The statute imposes an absolute duty to make the place as safe as the nature and place of the employment will reasonably permit. Performance of the common-law duty to make it reasonably safe does not suffice.

The portions of the charge above referred to were apparently in part taken and in part fabricated from an opinion of this court in *Olson v. Whitney Bros. Co.* 160 Wis. 606, 618, 150 N. W. 959, written by Mr. Justice VINJE,

wherein Mr. Justice BARNES filed a dissenting opinion in which Mr. Justice SIEBECKER concurred, in which the view is expressed that the decision "practically gets us back to the common-law rule that where the master exercises ordinary care in providing for the safety of the employee he has performed his full duty." The portion of the opinion the trial court attempted to apply is quoted in *Maryland Casualty Co. v. Thomas F. Co.* 185 Wis. 98, at page 103, 201 N. W. 263, in which case Mr. Justice CROWNHART filed a dissenting opinion. It does not appear to have been again considered by the court. In the *Olson Case, supra,* a chain broke which was pulling a pile-driver on skids. The skids on either side were in parts, the part at the rear placed in front as the machine passed over it and neared the front of the forward part. It was customary to overlap the skids in laying them and to make a newly-laid skid level with the one it overlapped and to stagger the points of overlappage of the opposite skids. There was conflict under the evidence whether the skids were laid in the customary manner at the time the chain broke. The work was being done by employees of the defendant in charge of the foreman on the job, who was injured by the breaking of the chain. The jury found that the chain was strong enough to render the moving of the driver in the customary manner *"as free from danger as the nature of the work would reasonably permit."* It is to be noted that the language italicized, which is quoted from the question submitted to the jury, incorporates the language of the statute, instead of using the phrase ".a reasonably safe place in which to work" which was used in the question in the instant case. The court considered that the question for determination under the evidence was whether the statute required the chain to be made as free from danger as the nature of the employment would reasonably permit irrespective of or in respect of the kind of work to be done with it and the probable use to which it might be put; and was of

opinion that the freedom from danger required was in respect of, not irrespective of, these matters. In this view there was at least some reason for the statements of the opinion respecting what an ordinarily prudent man might reasonably anticipate as to the use to which the chain would be put and the manner in which the work would be carried on. In the instant case there was no need or occasion for interpolating in the charge anything about the use to which the temporary plank would be put or the manner in which the work would be carried on. Both were known to the employer, and there was no deviation from the customary methods of the work or the use of the plank as an instrument of carrying on the work. Incorporating in the charge the phrases respecting ordinary care and reasonable anticipation could only confuse and mislead by conveying the idea that if the defendant used ordinary care in view of what might reasonably be anticipated he fulfilled his statutory duty. Whether the statement of the law referred to made in the *Olson Case, supra,* was correct or incorrect, it had no place in the instant case, because no such factual situation as it rested upon existed herein. It is said in the *Olson Case,* p. 606, at p. 610, that one "cannot escape liability by showing that he exercised ordinary care or even extraordinary care to make it (the place of employment) safe. The exercise of care on his part becomes immaterial as a defense *per se."* The charge herein as a whole carried the erroneous idea that if the defendant used ordinary care to make the place of work safe, it performed its duty under the statute.

There was thus no determination of the issue of performance of statutory duty by the defendant. In this situation there should be a new trial of the case if the plaintiff fails to sustain his contentions under (1) and (2) above stated, unless this question must be held to have been determined by the trial court in support of the judgment under sec. 270.28, Stats., in absence of request by the plaintiff for submission

of a specific question correctly covering that issue. We are of opinion that the rule of the statute does not apply because the trial judge was in error as to the requirement of the statute. He intended to procure a finding of the jury whether the defendant had complied with the statute and framed and submitted a question conceived by him as covering that issue. How can it be inferred or implied that he determined the question of violation of the statute in such manner as to support the judgment, when it appears from the question itself and his instructions in connection with it that he had a wrong conception of the duty imposed by the statute? It is said in *Smith v. Poor Hand Maids of Jesus Christ,* 193 Wis. 63, 68, 213 N. W. 667, that when neither counsel nor court conceived the vital issue of a case there should be a new trial. The word "conceive" implies a proper conception. In the cited case both counsel and court considered the only issue to be the statute of limitations, whereas the primary issue was whether under the facts liability ever existed at all, and, there being no submission of that issue, a new trial was ordered. With at least equal reason should a new trial be ordered where the vital issue is not covered by a question improperly conceived by court and counsel as covering it. It is a misuse of sec. 270.28 to submit a case to the jury on one theory and then resort to the section and dispose of it on another theory. *Cooper v. Huerth,* 156 Wis. 346, 146 N. W. 485. We conclude that we cannot uphold the judgment on an implied finding of the circuit judge.

It has been suggested that the error in the form of the question is not prejudicial to the plaintiff, because the question as submitted is more favorable to the plaintiff than the proper form of question would have been. This seems to us not so. The statute is said in the *Rosholt Case, supra,* to impose a higher degree of care as to safety than the common-law rule and that the higher duty thus imposed is abso-

lute. All the later cases involving the statute are to the same effect, expressly or by implication. The circumstances of the instant case show that even though the question submitted may be considered by the jury as calling for a negative answer to the question as put, had the closing phrase been "as free from danger as the nature and place of the employment would reasonably permit" they would well nigh have been compelled to answer the question in the affirmative. Certainly the loose plank might have been fastened. Certainly had it been fastened the place of work would have been safer than it was. Thus if nothing appeared in evidence showing that fastening of the plank would unreasonably hinder the work the question would necessarily have had to be answered in the affirmative, and there is little if anything in the evidence to indicate that fastening of the plank would interfere with the work.

(2) We are of opinion that the finding of the jury that the plaintiff was guilty of contributory negligence must be upheld. Under the plaintiff's testimony he was standing on the pile of crushed stone near the loose boards attending to his duty of watching the dials and registering the weights of sand and stone as they were dumped together in the trucks. This position placed him directly in front and afforded him a clear view of the dials. However, he could have stood upon the ground at the side of the pile of crushed stone and watched the dials from that position. The position he took was perhaps more convenient for him. It brought him closer to the dials and was more directly in front of them. But nevertheless the jury may have thought that due care on his part required that he remain upon the ground in performing his work, or at least that he should have noticed the instability of the plank and kept farther away from it. If the jury took the testimony of the workman who was controlling the flow of material from the hopper, to the effect that plaintiff stepped upon the top of

the loose plank to watch a workman who was pounding on the side of the hopper to loosen clogged sand, the finding of contributory negligence is more strongly supported by the evidence.

(1) It is stated above that as the loose plank manifestly might have been fastened and that the place of work would have manifestly been safer had it been fastened, the defendant did not comply with the statute unless the circumstances were such that fastening the plank would have so interfered with the work being carried on that the nature of the work would not reasonably permit of their fastening. As stated in the *Rosholt Case, supra,* page 174 : "There may be places which cannot be made safe without seriously interfering with the carrying on of the work. As to such places the master is required to make them only as free from danger as the nature of the employment will reasonably permit. Where the nature of the employment is such that it will reasonably permit a place to be made safe then it must be made so, regardless of the character of the employment," unless because of statutory exemptions not here involved. So the point now under consideration is whether the evidence contains anything to warrant the jury in finding that the nature of the work being carried on was such as not reasonably to permit the fastening of the plank. It appears that the temporary plank was only used when the pile of stone got so high that it overflowed into the pit beneath the hopper. When this occurred the plank was put in place, the bottom of it an inch or so below the top of the permanent planking with nothing but the permanent planking at its bottom and the ladder at its middle to prevent it from falling outward. It must be borne in mind that neither end of the plank had anything at all to rest against except the stone beneath and an inch or so of plank at the top of the permanent planking. Manifestly the plank was likely to give way upon slight disturbance at parts away from the ladder. If there was only occasional need for the temporary plank, and the need lasted

only a short time, the jury might consider it would unreasonably hinder the work to fasten it each time, although there would seem but slight reason for such holding, as double cleats to insert it between might easily have been affixed to the permanent planking to prevent it from falling outward or such cleats affixed to the temporary plank and shoved down over the permanent planking to prevent its so falling. Any one who has seen the ordinary extra side boards to a wagon box would, it would seem, have gumption enough to affix a rigging for the temporary plank that would have added materially to its safety. On the other hand, if the conditions were such that the temporary plank was kept in place continuously or a large portion of the time, the inference would necessarily follow that it would not unreasonably interfere with the work to arrange some method of fastening to prevent it from falling outward. The evidence is not at all clear as to how frequently or for how long periods at a time the temporary plank was used, and we are of opinion that we cannot say from the evidence as matter of law that the place of work was not safe under the statute.

It is urged by respondent in effect that the plaintiff was not engaged in his work or at his place of work at the time he was injured but had stepped aside from his work and stepped on the loose plank from idle curiosity. If this be so he was a "frequenter." The place where he stood was a place of employment. The ladder was placed for use in connection with the work, and one could not use the ladder without going on the stone pile and the plaintiff was standing where one might go to reach the ladder. From the photograph in evidence as well as from the testimony we infer that the workman operating the levers controlling the flow of material necessarily stood on the stone pile to operate them. If this workman while at work had been injured by the giving way of the plank, there would be no doubt of his right of recovery in case his place of work were found not safe, in absence of contributory negligence, unless recovery

under the statute were prevented by the workmen's compensation act, and the plaintiff as a "frequenter" is entitled to the benefit of the statute the same as a workman. *Washburn v. Skogg,* 204 Wis. 29, 233 N. W. 764, 235 N. W. 437. A frequenter is defined by sec. 101.01 (5), Stats., as a person not a trespasser who may be in a place of employment, and the plaintiff was not a trespasser.

The appellant claims that if the defendant is not to be held as matter of law to have violated the safe-place statute, it must at least be so held that its negligence was greater than that of the plaintiff and that the plaintiff is entitled to such a holding under the comparative negligence statute, which provides that where both parties are negligent the one whose negligence is less shall recover against the other. Sec. 331.045, Stats. We have held that where both parties are negligent the question of their proportionate negligence is ordinarily for the jury. So as to the question whose negligence is the greater. We perceive nothing to except this case from the rule.

It is urged in behalf of respondent that inasmuch as the jury found the plaintiff's negligence was one hundred per cent., this necessarily excludes the idea that the defendant was negligent to any degree and requires affirmance of the judgment. This would of course be true had the question of defendant's negligence been properly submitted to the jury and the jury had found the defendant not negligent. The finding of the jury that the plaintiff was one hundred per cent. negligent is manifestly based on their finding that the defendant was not negligent at all. The latter finding having fallen because of the improper submission, the finding that plaintiff was one hundred per cent. negligent falls with it.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions for a new trial in accordance with the opinion.