SWEITZER, Respondent, vs. Fox and others, Appellants.

*September 14—November 9, 1937.*

For the appellants there were briefs by *Wiley, Wiley & Wiley* of Chippewa Falls, and oral argument by *Marshall Wiley* and *Alexander Wiley.*

For the respondent there were briefs by *Larrabee & Larrabee* of Chippewa Falls, and oral argument by *Orrin H. Larrabee.*

The following opinion was filed October 12, 1937:

FRITZ, J.   At 6:30 a. m., on June 16, 1936, the plaintiff was injured upon falling on the floor in the storage room of a plant in which the defendant copartners, Fox and Street, manufactured ice.   The plaintiff was at the plant to procure a truckload of ice for his employer, who was a customer of Street and Fox.   To get ice, the truck drivers regularly went into the storage room to move the blocks of ice to the exit at which they could load them onto their trucks.   After the blocks of ice were frozen in metal cans on an upper floor, they were immersed in a bath of water to loosen the ice from the cans.   Then the cans were emptied in pairs into a chute, which extended down into the storage room, so that the blocks of ice, traveling alongside of each other, together with some of the water in the cans, were dumped on the floor of the storage room.   At the time of plaintiff's injury, the floor of the chute was twenty-nine inches wide and made of 2″x8″ planks, between which there were four 2-inch wide openings which allowed some water to drain off.   At the entrance of the chute into the storage room there were two wooden doors hinged at the outer side, which would be forced open by the ice blocks.   At that entrance there was also a drain in the floor of the storage room, but the chute extended so far into

the room that it partly covered that drain. Because of those conditions, considerable water and ice chips, which broke off as the blocks were dumped into the chute and bumped through the doors, would enter onto the storage-room floor and freeze there with an uneven and rough surface; and between the blocks, as they slid in pairs across the floor from the chute, a higher ridge of ice chips and water would accumulate and freeze onto the floor. That ridge, at the time of the plaintiff's injury, was four or five inches higher than the surrounding ice at the base of the chute, and it tapered down to about two inches higher at the place where plaintiff fell, ten feet from the chute. Until a week before plaintiff's injury, an employee of Fox and Street removed some of that floor ice every night by chopping it with an axe and hoe and sweeping it out. That reduced the accumulation daily so that no accidents occurred as the result of slipping on the floor. But no such chopping had been done for several days prior to plaintiff's injury, and no sweeping had been done since 9 o'clock a. m. on the preceding day.

There was some confusion and conflict in the evidence as to the manner and the cause of plaintiff's falling to the floor. However, there was evidence to the effect that while he was pulling hard on ice tongs, which he had hooked on a block of ice that he was trying to start in order to move it across the floor, his foot slipped on the ridge of ice in front of him; and that as he slipped he fell, and the tongs either unhooked or loosened, or tore out a corner of the block of ice, and he let loose with one hand, and fell to the floor. The jury found that the individual defendants had failed, at the time and place of plaintiff's injury, to maintain the floor of the ice-storage room in as safe a condition as the nature of the business would reasonably permit; that that failure of duty was a cause of plaintiff's injury; and that the plaintiff was not negligent in failing to use more care than he did to avoid injury.

The defendants contend that under the evidence the cause of plaintiff's injury was so conjectural that there was no issue for the jury; and that, therefore, the court erred in denying the defendants' motions for a nonsuit, a directed verdict, and judgment notwithstanding the verdict. Their contention is based largely upon the statement, "My ice tongs slipped off the ice, and I fell to the floor and struck my right knee on a sliver of ice lying on the floor. There was no defect in the floor, but the floor was naturally slippery because it was cold in the storage room. The accident was caused by my tongs slipping off the ice," which is part of a report written above the plaintiff's signature and obtained from him while he was in the hospital by an adjuster for the defendant insurer. However, in respect to that statement, the plaintiff testified on the trial, "I didn't make it. He asked me if that would be the way to put it down and I said I didn't know. He wrote it down to that effect. I had a chance to read it but I didn't pay much attention to it because I had other things on my mind, other than that. I heard that morning that they would take off my leg and I was thinking more of that." On the other hand, the plaintiff testified on his direct examination, "As I was going to pull one cake out . . . there was quite a ridge of ice there and it was very rough, . . . and as I did so I slipped. . . . I slipped and went backwards and I lit on the floor. . . . I was trying to start the ice. At the time there was a ridge of ice in front of me. I slipped that way, on that ridge. I was pulling when I slipped and went down." And when he was asked on cross-examination, "Now, would you say that you slipped on the floor when you grabbed one of these hunks of ice," he answered, "I slipped and at the same time I slipped, my ice tongs unhooked and I suppose I let loose with one hand." In view of that definite testimony on the trial, the statement, obtained by the adjuster from the plaintiff while he was in the hospital, as to the initial or primary cause of his slipping and falling does not ren-

der the evidence so conjectural that there was no issue for the jury in that respect. Statements obtained from a party on an adverse examination or otherwise prior to the trial, which are at variance or even in conflict with his testimony on the trial as to a fact essential to the maintenance of his cause of action or defense, do not necessarily render the existence of that fact so conjectural as to preclude a finding thereon in his favor. At most there is but a contradictory state in the evidence, and it is within the province of the jury to decide which statement is correct. *Swiergul v. Suamico,* 204 Wis. 114, 235 N. W. 548; *Babe v. Lappin,* 188 Wis. 351, 206 N. W. 64; *Stewart v. Olson,* 188 Wis. 487, 206 N. W. 909; *Sparling v. United States Sugar Co.* 136 Wis. 509, 513, 117 N. W. 1055. Consequently, it was within the province of the jury to believe the plaintiff's testimony on the trial, and to conclude therefrom that his fall was caused by his slipping on the ridge of ice in front of him when he was trying to start the block which he was pulling at the time he slipped and went down. The fact that as he slipped on the ridge and began to fall to the floor the ice tongs also slipped off the block of ice did not render the slipping of the tongs the proximate cause of his falling to the floor and sustaining injury.

Defendants also contend that as the floor of the storage room was slippery as a natural incident to the business, and the plaintiff knew all about it, there was no issue for the jury as to whether the defendants failed to maintain the floor in as safe a condition as the nature of the business would reasonably permit. They argue that the storage room was constructed properly; that it was maintained in its original structural integrity; that the use of the dump box is the only possible method of operating under the plan adopted; and that there is no affirmative evidence as to how the process could be improved. In seeking a recovery in this action, the

plaintiff relies upon the following provisions in ch. 101, Stats:

"Sec. 101.06 Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment . . . shall so construct, repair or maintain such place of employment . . . as to render the same safe."

"Sec. 101.07 (1) No employer shall require, permit or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employers shall fail to furnish, provide and use safety devices and safeguards, or fail to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employees and frequenters; and no employer or owner, or other person shall hereafter construct or occupy or maintain any place of employment, or public building, that is not safe, nor prepare plans which shall fail to provide for making the same safe."

"Sec. 101.01 (11) The term 'safe' or 'safety' as applied to an employment or a place of employment . . . shall mean such freedom from danger to the life, health, safety or welfare of employees or frequenters . . . as the nature of the employment, place of employment . . . will reasonably permit."

"Sec. 101.01 (5) The term 'frequenter' shall mean and include every person, other than an employee, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser."

In and under those provisions, there is no distinction made between an employee and a frequenter. Their language is just as mandatory in relation to frequenters as it is to employees, and their purpose is to provide the same protection to frequenters as to employees. *Washburn v. Skogg,* 204 Wis. 29, 35, 40, 233 N. W. 764, 235 N. W. 437; *Sandeen v. Willow River Power Co.* 214 Wis. 166, 177, 252 N. W. 706. By expressly defining the terms "safe" and "safety," as used in those provisions, to mean "such freedom from danger to the life, health, safety or welfare of employees or · frequenters . . . as the nature of the employment, place of employment, or public building, will reasonably permit," the incurrence of liability on the part of an employer to an employee or frequenter injured by reason of the employer's failure to provide a place of employment, or to there use safeguards or methods, which are as required by those provisions, is no longer dependent upon the existence of negligence on the part of the employer. In other words, if an injury is caused by a condition due to failure to comply with those provisions, then the mere fact that the failure was not due to negligence on the part of the employer is not sufficient to excuse him from liability under the statutes, because under them that failure is actionable, regardless of whether or not it was due to negligence on his part, if the place of employment or method used is not as free from danger to the safety of employees or frequenters as the nature of the employment or place will reasonably permit. *Olson v. Whitney Bros. Co.* 160 Wis. 606, 610, 150 N. W. 959. Consequently, cases in which recovery for injury by falling on ice was dependent upon proof of negligence, or equivalent conduct, on the part of the defendants in relation to the presence or extent of an accumulation of ice, are not in point in determining whether the condition involved herein was actionable. Neither is the right of plaintiff to recover herein dependent upon establishing negligence on the part of the defendants in respect to alleged defective construction or methods which resulted in

the condition that caused plaintiff's injury. Sufficient basis for the jury's finding, that Fox and Street failed, at the time and place of plaintiff's injury, to maintain the storage-room floor in as safe a condition as the nature of the business would reasonably permit, is afforded by evidence to the effect that the accumulation of ice on the floor was then greater and less free from danger to the safety of employees and frequenters than the nature and place of employment reasonably permitted, because of (1) the improper design and nature of the floor of the ice chute, and of the doors at its entry into the storage room; (2) the extension of the chute at its base across part of the drain in the storage-room floor; and (3) the failure to daily chop and sweep the ice off the floor. That the nature and place of the employment reasonably permitted such daily chopping and sweeping out of ice, and that it was thereby rendered freer from danger of injury to employees or frequenters, could fairly be inferred by the jury from evidence that the defendants had an employee do so every night for quite a period until a few days before plaintiff fell; that during that period no similar fall had occurred; but that within a few days after the defendants' discontinuance of that daily practice, another frequenter, as well as the plaintiff, fell upon the accumulated ice. Likewise, that the nature of the employment and place thereof reasonably permitted of rendering the place freer from danger of injury to employees or frequenters could be inferred by the jury from evidence that shortly after the plaintiff's injury remedial changes were made in the design and nature of the chute, by substituting iron bars for the wooden planks in the floor thereof, so as to provide more and greater openings therein through which more water and ice chips would fall before entering the storage room; by shortening the chute so as not to extend over the drain in the floor of that room; and by replacing the wooden doors at the entry of the chute into that room with a sheet of canvas, which did not cause as much chipping off of ice and kept more of the water and chips from entering the

room than was possible with the hinged doors. There was also evidence that by making those changes in the design and nature of the floor of the chute, it conformed to chutes used similarly in some other plants; and that by reason of all of those changes, the quantities of water and chipped ice which had theretofore entered and frozen onto the storage-room floor were diminished to such an extent that, if the changes had been in effect, and the practice of nightly chopping and sweeping the accumulated ice off the floor had not been abandoned at the time of plaintiff's injury, the icy condition of the floor would have been more free from danger. Even though some ice and slippery condition on the floor was but a natural incident in the conduct of the defendants' business, the evidence as to the manner and the extent to which the dangerous condition, which they permitted to exist at the time of plaintiff's injury, could have been and was remedied subsequently, warranted the jury's findings. The mere fact that some ice on the floor was usual and incidental to the business did not, as a matter of law, absolve Fox and Street from liability under the safe-place statutes, in view of the evidence which admitted finding that they had not used means and methods, which were reasonably available to render the place and the employment as free from danger as the nature thereof reasonably permitted. Because there was such evidence in this case, the conclusions reached in *Tallman v. Chippewa Sugar Co.* 155 Wis. 36, 143 N. W. 1054, are inapplicable.

The defendants also contend that because the plaintiff knew of the icy and slippery condition of the floor and the nature of the blocks of ice, which he had to handle, he assumed the risk, and therefore cannot recover herein. That contention cannot be sustained because assumption of risk is not a defense in an action by an employee or frequenter to recover under the safe-place statute. *Washburn v. Skogg, supra; Neitzke v. Kraft-Phenix Dairies, Inc.,* 214 Wis. 441, 253 N. W. 579. Neither can the finding that the plaintiff

was not negligent in failing to use more care than he did to avoid his injury be held perverse. That issue was clearly for the jury under the evidence, and there is no basis for charging perversity.

On this appeal the defendants assert, for the first time, that because the provisions in a "Public Liability Insurance Policy," issued by the defendant insurance carrier to the individual defendants, proved that the plaintiff had no present cause of action against the carrier, they were entitled to have granted in favor of the carrier either their motion for a nonsuit, for a directed verdict, or for judgment notwithstanding the verdict, and that because of the court's errors in those respects they are now entitled to reversal of the judgment. In his complaint the plaintiff had alleged that under the policy issued by the carrier to the individual defendants to indemnify and save them harmless from all claims for damages arising by reason of their negligence in the construction, maintenance, and operation of their ice plant, the carrier is also liable to plaintiff on account of his injury and damage. In a joint answer the individual defendants and the carrier denied that it is liable to plaintiff. No evidence in relation to liability on the part of the carrier to the plaintiff was offered, excepting that he introduced the policy. That, however, expressly provided that no action would lie against the carrier for any loss defined therein until the amount of damages, for which the insured is liable by reason of any casualty covered thereby, was determined either by final judgment against the insured after trial of the issue, or by agreement between the insured and claimant with the written consent of the carrier; and that if an execution on such a judgment against the insured was returned unsatisfied, the judgment creditor would have a right of action to recover the amount of such judgment against the carrier to the same extent that the insured would have had to recover against the carrier, had the insured paid the said judgment. With but those facts in evidence, it was established that no right to recover from the

insurer was to vest in a person who had sustained injury, and no cause of action to recover his damages therefor was to accrue in his favor against the insurer until after the entry of final judgment in an action against the insured, and the return unsatisfied of an execution issued thereon. Consequently, in the absence of proof establishing the occurrence of those essential events, there were not in evidence sufficient facts to establish any cause of action against the insurer. That being true, we are not here concerned with facts sufficient to establish an accrued cause of action which has been merely prematurely commenced, and the present maintenance of which could be deemed waived by the insurer's failure to duly file a plea in abatement on that ground. Neither are there applicable here any such provisions as secs. 85.93 and 260.11, Stats. (relating to automobile liability policies), under which an insurer is made directly liable to an injured person, who is thereby entitled to join the insurer in his action against the insured without first recovering a judgment against the latter. It follows that because there were no facts in evidence establishing present liability on the part of the insurer, it was entitled to have its motion for a nonsuit, a directed verdict, or judgment notwithstanding the verdict granted. (*Watkins v. Watkins,* 210 Wis. 606, 608, 245 N. W. 695; see also *Stenbom v. Brown-Corliss Engine Co.* 137 Wis. 564, 119 N. W. 308.) As there are not sufficient facts proven to entitle the plaintiff to a recovery herein against the insurer, the provision to that effect in the judgment must be reversed. However, as the ground now relied upon for that reversal was not asserted prior to the filing of the joint brief of the defendants, and as no separate case or brief was filed by the insurer, no costs are allowed to any of the defendants on that partial reversal.

The defendants Fox and Street further contend that they are entitled to a new trial because the denial of their motions

for a nonsuit and a directed verdict was prejudicial to them in that, because of the failure to grant those motions as to the insurer, it was not discharged as a defendant prior to the submittal of the issues to the jury. As the individual defendants failed to assert that point during the trial, and the evidence otherwise established liability on their part, they are not entitled now to any relief on that ground. *Estate of Leedom*, 225 Wis. 148, 154, 273 N. W. 471, 474; *Herro v. Heating & Plumbing F. Corp.* 206 Wis. 256, 263, 239 N. W. 413.

*By the Court.*—Judgment affirmed as to the defendants W. H. Fox and D. M. Street, with costs to the plaintiff. Judgment reversed, without costs, in so far as it provides for a recovery herein by the plaintiff from the Employers Mutuals Indemnity Corporation, and the cause is remanded with directions to dismiss the action against that defendant.

A motion for a rehearing was denied, with $25 costs, on November 9, 1937.