## SYKES et al. v. BENSINGER RECREATION CORPORATION.

### No. 7395.

Circuit Court of Appeals, Seventh Circuit.

Jan. 6, 1941.

Rehearing Denied Feb. 20, 1941.

[1] Judge Arant voted in conference to affirm the order of the District Court but died before the opinion was prepared.

TREANOR, Circuit Judge, dissenting.

T. H. Spence, Arthur Wickham, and C. J. Otjen, all of Milwaukee, Wis., for appellant.

Van B. Wake and James D. Shaw, both of Milwaukee, Wis., for appellee.

Before EVANS and TREANOR, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

The issue determinative of this appeal is the liability, under the Wisconsin "safe place" statute, of a bowling alley proprietor, to a player who sustained injuries when he slipped and fell on the alley, catching his foot in a two inch space between the floor and the bottom of the return trough of the bowling alley structure. Liability is predicated on the presence of this space, the existence of which was known to the owner and could have been obviated by a "mop board" strip.

Several other questions are raised which bear on the liability of defendant, Bensinger Recreation Corporation, as well as the impleaded defendant, Brunswick-Balke-Collender. We need not state nor consider them in view of our conclusion that no liability is shown on the part of the primary defendant.

The cause was submitted to a jury which returned a special verdict wherein it was found:

(1) There was a violation of the Wisconsin Safe-Place statute by Bensinger.

(2) Bensinger should have anticipated such an accident as occurred.

(3) The unsafe condition of the premises was the proximate cause of the injury.

(4) There was no contributory negligence on the part of plaintiff.

(5) There was no comparative negligence on plaintiff's part.

(6) Plaintiff's damages were $14,165.

Judgment for plaintiff followed the rendition of the verdict and defendant Bensinger appeals.

The Wisconsin statutes, the construction and interpretation of which present the difficult question here involved, are sections 101.06 and 101.01[1]

[1] "101.06 Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and *every owner of a* place of employment or a *public building* now or hereafter constructed *shall* so construct, repair or *maintain such* place of employment or *public building,* and every architect shall so prepare the plans for the construction of such place of employment or public building, *as to render the same safe."*

"101.01 * * * (11) The term 'safe' or 'safety' as applied to an employment or a place of employment or a public building, shall mean such freedom from danger to the life, health, safety or welfare of employes or frequenters, or the public, or tenants, or firemen, and such reasonable means of notification, egress and escape in case of fire, and such freedom from danger to adjacent buildings or other property, *as the nature of the employment, place of employment, or public building, will reasonably permit."*

The Facts. Plaintiff, a man of 39, was bowling with friends in the Bensinger Alleys at about 11 P. M. on January 19, 1935. He had bowled there previously 125 or 130 times. He was playing the "fourth frame" and "was about to deliver the ball when his foot slipped and caught underneath the return trough." He was unable to release his foot, and his body turned over and the result was he fell and broke his leg. The femur bone was broken in several places. He was in the hospital from January 19, 1935 until September 15, 1935. He suffered permanent injuries in that there is a shortening of the leg and restraint in movement. His doctors' and hospital bills were over $2,000.

No liability is asserted because of plaintiff's slipping. There was admittedly no defect in alley construction or in maintenance. The sole ground on which liability is predicated is the alleged defective structure of the bowling alley, due to the existence of the gap or space (conceded to be approximately two inches) under the trough.

The picture of the section of the alley in question aids us in visualizing the situation.

There was evidence introduced as to the many hundreds of thousands of games played in tournaments participated in by approximately 25,000 persons annually, over a period of several decades, without any accident of this kind ever occurring. Nor had any such accident ever been reported to the National Bowling Congress.

■ The rule announced in the Wisconsin decisions must furnish the guide for our disposition of this appeal. The construction which the Wisconsin courts have given its statutes, governs. Because the facts in the various cases differ, the rule which runs consistently through all of them must be read and interpreted on a background of the facts of each case. These cases with their varying facts, however, supply the test of liability, which we must apply.

We quote briefly only a few of them:

"The statute is a very beneficent one and the court has been disposed to give full effect thereto in letter and spirit." Hommel v. Badger State Co., 166 Wis. 235, 243, 165 N.W. 20, 23.

"The statute imposes an absolute duty to make the place as safe as the nature and

The alleys were installed in 1927. It happened that the room in which this particular alley was located was a trifle small for the five alleys and the offending space was raised about five-eighths of an inch higher than ordinarily, making the space between floor and trough about two inches.

This type of construction was the "standard" type of bowling apparatus in use in 1927. Impleaded defendant's proof showed it manufactured over seventy per cent of this apparatus in use and they were of this construction. About eighteen months prior to the trial (probably after the filing of the instant suit) they changed their construction to eliminate this space by closing it with a board. Their evidence showed that "some" alleys had closed off the space with a mop board a "number of years" before, for greater sanitation.

place of the employment will reasonably permit. * * * The statute is said * * * to impose a higher degree of care as to safety than the common-law rule and that the higher duty thus imposed is absolute." Mullen v. Larson-Morgan Co., 212 Wis. 52, 57, 60, 249 N.W. 67, 69.

"The duty imposed upon the employer by the statute is absolute, in the sense that, if his employment or place of employment fails to come up to the statutory requirement * * * he cannot escape liability by showing that he exercised ordinary or even extraordinary care to make it safe. * * * Places of employment and appliances are safe within the meaning of the statute when they are so constructed and in such condition that, considering the nature of the employment conducted in them, and the manner in which it is customarily

carried on, or the manner in which an ordinarily careful and prudent man may reasonably anticipate it might be conducted, and considering the use the appliances are, with the knowledge of the employer, being put to, or the use which an ordinarily careful and prudent person may reasonably anticipate they might be put to, they are as free from danger as such employment and such use will reasonably permit. * * * In other words, safety is not an absolute, fixed term, but a relative one, being always measured by the kind of employment and the manner in which it is customarily carried on, by the use appliances are with the knowledge of the employer being put to, or which an ordinarily prudent person might reasonably anticipate they may be put to. Therefore if a place of employment or an appliance is as free from danger as the nature of the employment will reasonably permit when used in a customary or usual manner for the work intended, or in such a manner as an ordinarily prudent and careful person might reasonably anticipate it might be carried on or used for, it is safe, though it may not be safe for a condition or a manner of carrying on the work that could not reasonably be anticipated by the employer." Olson v. Whitney Bros. Co., 160 Wis. 606, 610, 612, 150 N.W. 959, 961.

"The statute imposes a duty beyond the duty imposed by common law. A place must not only be reasonably safe, as it was required to be by our common-law decisions, but it must be as 'free from danger as the nature of the employment will reasonably permit.'" Bunce v. Grand & Sixth Bldg., 206 Wis. 100, 104, 238 N.W. 867, 868.

"One must distinguish between insurer as to the character of the place, satisfying the calls of the statute, and absolute insurer of safety of employes * * *. Unsafe or improper conditions are the opposites of safe, suitable, and proper. Safe and proper in that there is no such danger as that which the statute was intended to obviate, within reasonable apprehension. Safety as regards all reasonable probabilities not all possibilities of personal injury. Safe, suitable and proper, so far as human foresight devoted to the matter, not with ordinary attention merely, but with a purpose to accomplish * * * a place so safe as to render personal injury so remote as to be, at most, merely within the realm of possibility." Kendzewski v. Wausau S. F. Co.; 156 Wis. 452, 454, 455, 146 N.W. 516, 517.

"The safe-place statute * * * does not require the owner of the premises resorted to by the public to do the impossible or the unreasonable in maintaining its premises in a safe condition." Heckel v. Standard Gateway Theater, 229 Wis. 80, 84, 281 N.W. 640, 641.

"The mere fact that an accident happens does not prove that the place was not safe." Heckel v. Standard Gateway Theater, 229 Wis. 80, 85, 281 N.W. 640, 642.

"The defendant was familiar with the structure and used it frequently. The plaintiff had used it only a few times. * * We consider that these distinctions warrant different inferences respecting anticipation of injury." Washburn v. Skogg, 204 Wis. 29, 37, 233 N.W. 764, 768, 235 N.W. 437.

From the foregoing pronouncements, we draw the following conclusions.

■ The statutes relied upon impose on the owner of a building a duty which is higher than that which existed under the common law. The owner is not, however, an insurer.

■ The duty of the employer or owner of a public building to provide a safe place for employees or frequenters is an absolute one. However, the terms "safe" and "safety" are relative, not absolute.

In other words, the owner must furnish a safe place, but *what is a safe place* depends upon the facts and conditions in each case. The test of the term "safe" may be found in the clause "as the nature of the place of employment or public building *will reasonably permit.*"

■ While it is the clear duty of the court to submit to the jury, all cases wherein the testimony is conflicting, or legitimate conflicting inferences are deducible from uncontradicted testimony, the court's duty is equally clear first to ascertain whether there is any conflict either in the evidence or in the inferences bearing on the question of a *safe* place.

■ We are persuaded from a reading and a study of all the evidence that there was no such issue in the case before us. Defendant could hardly be charged with the failure of a duty to avoid a *danger* which he did not know existed. If there existed danger in the space between the trough and the floor, it had always been there.

The allegedly defective space was always present in most of the bowling alleys

in the country. Millions upon millions of games had been played on alleys of this kind. No accident related thereto had ever occurred.

To hold that a structure such as here asserted would be violative of the Wisconsin safe place statute would make the owner an insurer. He would be liable for accidents which neither he nor anyone else could foresee and which had never before occurred and apparently the like of which has never since occurred. Such a rule would require the owner to anticipate every *possibility,* a construction of the statute which the Wisconsin court has refused to give. Kendzewski v. Wausau S. F. Co., 156 Wis. 452, 146 N.W. 516. It would require a holding on our part that the mere fact that an accident happened, in and of itself, proves the place was not safe. This would be contrary to the holding of the court in Heckel v. Standard Gateway Theater, 229 Wis. 80, 281 N.W. 640. Distressing as the unfortunate accident was, we must hold it one for which defendant is not liable.

The judgment is reversed with directions to grant a new trial.

TREANOR, Circuit Judge (dissenting).

I am of the opinion that the "place" in question was not "safe" within the requirements of the Wisconsin statute. The term "safe" is defined as "such freedom from danger to life, health, safety or welfare * * * [of] frequenters * * * as the nature of the employment, place of employment, or public building, will reasonably permit." It is obvious that the type of construction of the bowling alley which left an open space between the floor and the return trough of the alley created a hazard, however slight, for bowlers. The nature of the place of employment reasonably permitted the avoidance of the hazard. In fact the danger could be avoided by nailing a board over the open space; and the defendant did this prior to the trial. The "place" was not legally "safe" since it was not as free from danger to life and safety as the nature of the place reasonably permitted.

"The statute imposes an absolute duty to make the place as safe as the nature and place * * * will reasonably permit. * * * The statute is said * * * to impose a higher degree of care as to safety than the common-law rule and that the higher duty thus imposed is absolute." Mullen v. Larson-Morgan, 212 Wis. 52, 57,

60, 249 N.W. 67, 69. In another decision the Supreme Court of Wisconsin points out that the statute has imposed a duty to keep a place as "free from danger as the nature of the employment will reasonably permit," whereas, the common law duty was to keep a place reasonably safe. As stated by the Supreme Court of Wisconsin in Mullen v. Larson-Morgan, supra, the duty of the person responsible for the condition of the "place" to keep it as "free from danger as the nature of the employment will reasonably permit" is absolute.

The evidence respecting the condition of the bowling alley was sufficient to justify a finding that the method of its construction did not make it as "free from danger as the nature of the place" reasonably permitted.