**Appellate Department, Superior Court, Los Angeles**

[Crim. A. No. 3334. Dec. 13, 1955.]

THE PEOPLE, Respondent, v. WILLIAM COSTELLO, Appellant.

Grossman & Rosen for Appellant.

Roger Arnebergh, City Attorney (Los Angeles), and Eugene Didak, Deputy City Attorney, for Respondent.

BISHOP, J.—██  It is made unlawful, by section 42.20 of the Los Angeles Municipal Code, for any person employed in a place where drink is sold to be consumed upon the premises, "to beg, solicit or importune any patron or customer of or visitor in such establishment to purchase any . . . drink . . . to be consumed by any frequenter, habitue, or any vagrant or idle person about such place . . ." The defendant was charged with having violated this section and has appealed from a 30-day sentence (and order of probation) following his conviction. We are of the opinion that the evidence does not sustain the conviction.

The evidence is without substantial conflict. A police officer ordered a drink in a café where the defendant was acting as bartender. After the drink was served the officer, a waitress employed in the place, who was behind the bar, engaged the officer in conversation and the defendant inquired if he (the officer) did not want to buy the waitress a drink. He did, and then several more, paying for them with marked bills which he recovered after arresting the defendant.

This evidence proves the offense charged if, and only if, the waitress was a "frequenter" or "habitue" within the meaning of the ordinance. We are convinced that she was neither. We do not have a built-in definition of the two words, as the court did in *Mullen* v. *Larson-Morgan Co.* (1933). 212 Wis. 52 [249 N.W. 67], where the statute defined a "frequenter" as including "every person, other than an employee, who may go in or be in a . . . public building . . . other than a trespasser," but we find them defined in the dictionaries. "Habitue," we are told, means: "a habitual frequenter of any place, especially one of amusement, recreation, and the like: as, an *habitué* of the billiard room." (Cen-

tury Digest); "one who frequents a place or class of places: as, a *habitué* of the theatre (Webster's New Int. Dictionary, 2d ed.). "Frequenter" is defined: "One who frequents; one who often or habitually visits or resorts to a place" (Century Dictionary); "one who frequents" (Webster's New Int. Dictionary, 2d ed.). A reference to the verb is necessary to evaluate these definitions that use it. "Frequent": "2. To visit often; resort to habitually; as, to frequent the theater" (Century Dictionary); "1. To visit often; to associate with, to be in, or to resort to, often or habitually; as . . . to *frequent* lecture halls" (Webster's New Int. Dictionary).

■ A crime is not to be built up by giving to the words that create it an unusual or seldom used meaning. (*Gayer* v *Whelan* (1943), 59 Cal.App.2d 255, 262 [138 P.2d 763, 767].) We are of the opinion that it would be a violation of this rule of construction if "habitue" and "frequenter" were held to embrace the proprietor of a billiard hall; although he may be in attendance daily, he cannot be said to be "visiting" it or "resorting" to it. The same must be said of a cashier of a café; she is not one of those characterized as a "frequenter" or "habitue." The evidence does not suggest that the waitress ever entered or remained in the café where the defendant tended bar except as an employee. If this interpretation opens the door to a new use of B girls, the city council can very quickly and very easily kick it shut. It is not for the courts to supply words that the present section does not contain.

The judgment and order granting probation are reversed.

Shaw, P. J., concurred.

SWAIN, J.—I dissent. Subdivision (a) of section 42.20 of the Los Angeles Municipal Code, under which defendant was convicted, makes it a misdemeanor for an employee of an on-sale liquor establishment to solicit a customer to purchase a drink for a frequenter and habitue of such place or a drink for a vagrant or idle person about such place. The evidence supports implied findings that the defendant was an employee (bartender) at the café in question and that he solicited a customer (an officer of the L.A.P.D. Vice Squad) to buy a drink for a waitress employed at that establishment. The issue here is, Was the waitress a "frequenter" as that term is used in the ordinance?

Webster defines a "frequenter" as "one who frequents" and "frequent" as "to visit often; to associate within, to be in or to resort to, often or habitually." By the same authority "habitue" is "one who frequents a place or class of places." I see no distinction between the two so I shall discuss "frequenter" alone. There is no evidence that the waitress was a vagrant. The majority opinion holds that the waitress was not shown to be a frequenter. I disagree.

The evidence shows that she was regularly employed at a salary of $50 per week and that she was paid by check after deducting social security. From this it is obvious that she went to the café frequently. This satisfies the definition of frequenter. The ordinance does not say "frequenter other than an employee." A statute or an ordinance is to be interpreted in the light of the object which it seeks to accomplish. *Johnston* v. *Brewer* (1940), 40 Cal.App.2d 583, states, page 587 [105 P.2d 365]: "In determining the intent with which an ordinance was enacted our consideration is primarily directed to discovering the evil sought to be remedied by it."

There are doubtless many reasons why the ordinance was adopted but one evil sought to be remedied was the practice of relieving a customer of more money than he wished to spend and doing this by soliciting drinks for persons in the café who were not his guests and for whom, on his own initiative, he would not buy them. This form of artfully and artificially stimulating business and speedily parting a customer and his money is well illustrated in the present case. The officer was in the bar approximately twenty minutes. During that time he was induced to spend approximately $17 for drinks. If we hold that an employee cannot be a frequenter, we create a hole in the ordinance which could practically destroy it. All an owner would then have to do would be to put the B-girls on salary and let another employee solicit drinks for them. If the waitress had solicited drinks for herself, and it appears that she too did that, she would have violated the ordinance. (*People* v. *Bennett* (1950), Crim. A. 2640.) It is unthinkable that the city council intended to permit an employee to solicit drinks for another employee when it used the word "frequenter" which can be interpreted to cover both employees and nonemployees.

There is another point involved in determining the status of the waitress. Although she was employed as such, she was not acting as a waitress while she was drinking with the police officer. This brings her within the rule in *Mullen* v. *Larson-*

*Morgan Co.* (1933), 212 Wis. 52 [249 N.W. 67]. This deals with the "safe place statute" which protects employees and frequenters. At page 63 the court said: "It is urged by respondent in effect that the plaintiff was not engaged in his work or at his place of work at the time he was injured but had stepped aside from his work and stepped on the loose plank from idle curiosity. If this be so he was a 'frequenter.' The place where he stood was a place of employment. The ladder was placed for use in connection with the work, and one could not use the ladder without going on the stone pile and the plaintiff was standing where one might go to reach the ladder. From the photograph in evidence as well as from the testimony we infer that the workman operating the levers controlling the flow of material necessarily stood on the stone pile to operate them. If this workman while at work had been injured by the giving way of the plank, there would be no doubt of his right of recovery in case his place of work were found not safe, in absence of contributory negligence, unless recovery under the statute were prevented by the workmen's compensation act, and the plaintiff as a 'frequenter' is entitled to the benefit of the statute the same as a workman. (Citing case.) A frequenter is defined by section 101.01(5), Stats., as a person not a trespasser who may be in a place of employment, and the plaintiff was not a trespasser." It is obvious from this that an employee who has stepped aside from her duties but remains on the premises of her employer may be a frequenter. The evidence would warrant an inference that the waitress was not a stranger to this way of dealing with customers. She was not backward in ordering drinks or in the amount she consumed.

It is true that the Supreme Court of Wisconsin, speaking of the above mentioned statute, said (*Washburn* v. *Skogg* (1931), 204 Wis. 29 [233 N.W. 764]): " A frequenter is any person not an employee," but that statement is not warranted by the language of the statute. Employees and frequenters are named as persons to be protected. The plaintiff in that case was not an employee. The court was trying to say that all employees were protected against unsafe places of employment and, in addition to that, all frequenters who were not employees were also protected.

I would affirm the judgment and the order granting probation.